### MEADOR & MEADOR v. SORSBY.

1. Land acquired after the execution of a will, does not pass by a general devise ; nor will a power contained in the will, to sell all the estate of the testator, authorize the exceutor to sell after-acquired land.
2. An order of the County Court, directing the administrators to sell pursuant to the will, land acquired previous to its execution, is a nullity.
3. The rule of law is the same, whether the title of the deceased to the land was legal or equitable.
4. The purchaser at such a sale may rescind the contract ; and the case is not varied by the fact that a deed for the land has been executed by the person holding the legal title, to be delivered to the purchaser on the payment of the purchase money; as the minor heirs would not be precluded from asserting their title when they came of age.
5. Whether after-acquired land may not pass, by a will clearly indicating such an intention.—*Quere.*

. Writ of error to the Court of Chancery for the third District of the Southern Division.

Meador & Meador v. Sorsby.

THE bill seeks a rescission of a contract for the purchase of lands. The case as stated in the bill is this : The complainant purchased a tract of land at a public sale conducted by the defendants, as the administrators, with the will annexed, of James Meador, on a credit of twelve months; for' which he gave his note, and received a bond executed by one of the defendants,· · conditioned to make a good and sufficient title in fee simple for the land. The complainant entered into possession, and held the land until after suit was instituted on the note, and until a short time before filing this bill, at which time he abandoned it. ' The will of James Meador, under which the defendants acted, is dated the 4th of September, 1833, and is in these words :·

"This the first and last will of James Meador, now being in my right mind and knowledge. I do wish my property ·to remain until the first of January, 1836, and leave my son, John Meador, to act as overseer, until that time expires. Then I leave my beloved wife, Elizabeth Meador, three negroes, Jacob, Denis and Tilda, and two horses, to be chosen ; some hogs and cattle, sufficient for a reasonable support ; and the tract of land I now live on, which is two hundred and eighteen acres, her life time ; and at her death to be equally divided among the heirs. Then, when John's time is out, sell and divide equally the rest according to what they have had of my estate. Some have had some and some have had none. And the balance of my estate remaining in Carolina, to be collected and sold, and equally divided among my lawful heirs. When I do hereunto set my hand and seal, this 4th September, in the year A. D. 1833.                              his

JAMES ⋈ MEADOR."
mark.

The will was attested by two witnesses, and admitted ' to probate on the 22d August, 1836; and the defendants appointed administrators with the will annexed. On the 14th November, 1836, an order was made by the County Court of Greene county, authorizing the defendants to sell the real estate of the decedent on a credit of twelve months, according to the provisions of the decedent's will.

The lands purchased by the complainant at the sale made by the defendants under this order, were not purchased by the

decedent until after the date of the will, and he acquired them some time in the year 1835. At the time of his death, the legal title had not been conveyed, but remained in one Kirkpatrick, from whom the decedent purchased them. James Meador left several heirs, of whom some are infants under the age of twenty-one years. The bill alledges, that the defendants are incapable of making a valid title for the said lands, and prays that the contract of sale may be rescinded, the defendants enjoined from prosecuting the note, and that it be given up to be cancelled.

The will, probate, order of sale and bond are made exhibits.

The answer of the defendants admits, that they sold the land to the complainant under and by virtue of the power contained in the will, and according to the direction contained in the order of the County Court. They insist, that James Meador, at the time when he died, was in possession of the land; that he purchased the same from Kirkpatrick, and held his bond to make titles to the same, dated the 30th January, 1835; but they cannot state when the decedent obtained possession of the land in question, whether before or after the date of the will; and that they are advised that this fact is unimportant, as he was certainly in possession of the land when he died. They insist, that when the sale was made, the complainant fully understood that the legal title to the land remained in Kirkpatrick, but the purchase money having been paid, he was ready to convey the title to whomsoever the defendants should designate. That Kirkpatrick had executed a deed in fee simple for the said land to the complainant, which the defendants were ready to deliver to him whenever the purchase money was paid. They admit also that the decedent left several heirs some of whom are minors.

The testimony of several witnesses was taken on behalf of the complainant; but it is unnecessary to state their testimony, as the opinion of the Court is formed on the bill and answers alone.

At the hearing the depositions were shewn to be in the hand writing of the complainant; and the Chancellor was requested to exclude them, on the ground that he was a solicitor in the cause, within the meaning of the 11th rule of chancery practice.

The Chancellor overruled the exception, and decreed the rescission of the contract; reinstated the injunction which, at a former term, had been dissolved, and made it perpetual.

This decree is now sought to be reversed by the defendants, who assign that the Chancellor erred in overruling the exception to the depositions, as well as in the decree on the merits of the case.

PIERCE, for the plaintiff in error, insisted—

1. That the will was to be considered as taking effect only from the death of the decedent, and therefore was effectual to pass the subsequently acquired land.

2. If this is not the case, then the will may be considered as conferring a power to sell on whomsoever might be appointed administrator with the will annexed; and this power could attach to the after-acquired lands.

3. But if the will cannot be considered as operative on *lands*, or effectual as a power of sale, then it might be effectual to pass the peculiar interest which the decedent had to this land, which was nothing more than a possessory interest.

4. If the merits were adverse to the plaintiff in error, they must prevail on the exception to the depositions; and also, because the complainant, if his allegations are true, had a complete remedy at law.   [Wiley v. White, 3 Stew. & P. 355.]

JONES, contra.

GOLDTHWAITE, J.—1. The principal question involved in this case is, that which relates to the power of the defendants to sell the lands, which were the subject of the contract sought to be rescinded, either under the will of their testator, or under the order of the County Court.

The order of the County Court is not very much relied on; nor can it be, for it directs the defendants to sell the lands in accordance with the will; and there has been no proceedings under any of the statutes which permit a sale to be decreed under peculiar circumstances.   We may then dismiss the order of Court from consideration; for it is very clear, that the contract is not warranted by that alone.

At first, we were inclined to think it would be necessary to look into the evidence to ascertain when the title of the de-

ceased Meador commenced; but on a more particular examination, we find a very distinct admission, that the title bond from Kirkpatrick was executed on the 30th January, 1835; and the subsequent declaration, that the defendants cannot state when their testator obtained the possession of the land, whether before or after the date of his will is wholly unimportant, for the reason that the equitable title is not shewn to have existed at any time anterior to the date of the bond.

Our statute of wills is not very dissimilar from those in force in England, and is in these words: Every person of the age of twenty-one years, of sound mind, lawfully seized of any lands, tenements, or hereditaments, within this State, in his own right in fee simple, or for the life or lives of any other person or persons, shall have power to give, devise, and dispose of the same by last will and testament in writing; provided, &c. [Aikin's Digest, 448 s. 1.]

It is the settled law of England, that after-acquired lands are unaffected by a will. [Antkin v. Bakerham, Rep. Temp. Holt 750.]

The same doctrine has been held and frequently acted on in this country. (McKinnon v. Thompson, 3 John. Chan. 307; Livingston v. Newkirk, ib. 312.) In Virginia, where the statute authorizes the disposition by will of the lands which the testator has, *or, at the time of his death, shall have,* it has been held, that the intention of the testator to make his will apply to after-acquired lands, should appear in the will. [Hamersly v. 3 Call 289.] And this construction of the statute was confirmed by the Supreme Court of the United States in the case of Smith v. Edrington, 8 Cranch 67. The same rule seems to prevail in Kentucky. [Holloway v. Buck, 4 Litt. 293.]

We are not aware of any decisions elsewhere to the contrary.

It is scarcely necessary to add, that it is not essential that the testator should be seized of a legal estate at the time when the will is made. If he has an equitable estate merely, it is governed by precisely the same rules as if it was purely legal. (Langford v. Pitt, 2 P. Wms. 629; Potter v. Potter, 1 Vesey 437.)

If we now ascertain the facts connected with the case, it will be seen that the will was made in 1833; and the lands which were sold under the supposed power contained in the will, were not acquired by the testator until 1835. At the latter period, he purchased them from Kirkpatrick, who executed a bond to make him titles. The testator thus became seized of an equitable estate of inheritance, which, at his death, descended to and vested in his heirs at law.

2. But it is urged that, although the equitable title descended, yet the will contains a power to sell all the estate of the testator; and that this power may attach to the lands, although the lands themselves may not pass by the will. This position has frequently been overruled in England; and we are not aware that the correctness of the rule there established has ever been questioned. [Langford v. Eyre, 1 P. Wms. 72; Wagstaff v. Wagstaff, 2 P. Wms. 258; Jones v. Claugh, 2 Vesey, 366.]

3. The subsequent attempt to invest the complainant with the legal title, can have no effect to make him chargeable on the contract, because it is evident that he would be considered as a purchaser, with notice of the equitable title vested in the heirs at law of the deceased Meador. Such of them as are minors, could contest the complainant's right to the land after they became of age; and consequently it would be unjust to compel him to receive a title which may be disputed.

Our conclusion then is this: that as the lands were acquired by the testator in 1835, the will executed in 1833 was inoperative, either to pass the lands, or to subject them to the operation of a power; that the title of the testator to these lands descended to his heirs at law, in whom it yet remains; and that the sale by the defendants, although made in the utmost good faith, cannot have the effect to pass any title to the complainant, and that he is not required to receive that which is tendered to him on payment of his note.

We are satisfied that the decree of the Chancellor, so far as the merits of the case are concerned, is free from error.

It is unimportant to consider the effect of the exception to the depositions, because, in our view, they are laid aside entirely, inasmuch as the whole equity of the bill is admitted by the answers.

In relation to the point, that the complainant had an ample and complete defence at law, we think the circumstance that the bond to make titles, which was executed by one of the defendants, withdraws this case from the influence of the decision made in Wiley v. White, 2 S. & P. 355; and we are not therefore called on to decide, whether the circumstances of this case did not of themselves require the complainant to go into chancery to obtain a rescission of the contract.

Let the decree of the Chancellor be affirmed.