Daniel, J.
By the eleventh section of chapter one hundred and twenty-two of the Code of 1849, it is declared that a will shall be construed, with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. And as the will, on the construction of which the right to the land in controversy depends, was admitted to probat in 1852, some question might have arisen as *131 to whether we should apply to the will the rules prevailing at its date, (1842,) or the statutory rule just cited, were it not for the provisions of the 22d section of the same chapter (122) declaring that the preceding sections of the- chapter shall not extend to any will made before the act should be in force, but that the validity and effect of such will shall be determined by the laws in force on the day before this chapter should take effect in like manner as if those laws, so far as they relate to the subject, were therein enacted in place of such sections.
The English rule, that as to lands the testator speaks at the date of his will, and as to personals, at his death, had not been subjected here, prior to the adoption, of the Code, to any legislative change other than that made by the act of 1785. That act directs, “that every person, &c. shall have power, &c. to devise all the estate, &c. which he hath, or at the time of his death shall have, of, in or to lands, &c.” In the case of Allen v. Harrison, 3 Call 289, the extent of the change, in the old rule, contemplated by that act, was the subject of a very full examination; and the court were unanimous in the opinion that the act only gave a power to devise after acquired lands, leaving it to the discretion of the testator to dispose of them or not: That in order to produce that effect, there should be something indicating an intention to exercise the power; and that where there was nothing in the language of the will to show that the testator evidently contemplated a disposition of his after acquired lands, a devise of his lands should be held to refer to the lands owned by him at the date of his will. The same interpretation of the act must have also prevailed in the case of Bagwell v. Elliott, 2 Rand. 190 ; and was fully recognized by the Supreme court of the United States in the case of Smith v. Edrington, 8 Cranch’s R. 66.
*132 It is true that in several of our sister states, where statutes have been enacted similar in their provisions to our act of 1785, a strong disposition has been manifested so to construe those statutes as to assimilate much more closely the rule in question to the rule which applies to wills of personals. Thus, in the case of Loveren v. Lamprey, 2 Foster’s R. 434, (New Hamp.) where the words of the bequest on which the case turned were, “ I give and bequeath to my beloved wife Ruth Loveren all the residue and remainder of my estate wherever it may be found, to her, and her heirs and assigns, &c.” it was held that it was the intention of the testator to pass to his wife all his property owned by him at the time of his decease, after paying his debts, &c., and that the premises in controversy, purchased by the testator after the making of his will, passed by it. So in the case of Cushing v. Aylwyn, 12 Metc. R. 169, like views prevailed, and the court announced the broad proposition that where a will purports to dispose of the testator’s whole estate or property, the intention is to dispose of all the estate or property of which the testator may be the owner at the time of his death; and that such intent would be inferred unless something in the will should be opposed to such an inference. And so again a similar decision was made in the case of Willis v. Watson, 4 Scam. R. 64. In the state of Kentucky, however, where our act of 1785 has been adopted, the interpretation of the act given in the case of Allen v. Harrison has been closely adhered to. Warner’s ex’ors v. Swearingen & wife, 6 Dana’s R. 196 ; Ross v. Ross, 12 B. Monr. R. 437. In the first of these cases, the reasons for the adoption of this interpretation of the act are fully and clearly stated, and the main argument in favor of the competing construction successfully met. That argument was, that the English doctrine declaring that as to land or other real or immovable *133 estate, a testator speaks at the date of his will, was founded mainly on the terms of the statute of wills of Henry 8, empowering all persons having legal titles to lands held in free and common socage, to dispose of such lands by will, and all persons having such titles to lands held in chivalry, to dispose of two-thirds thereof by will, &c.; and that as now by the act of 1785 a testator has a power to dispose not only of the' lands which he hath, but also those which at his death he shall have, there was no longer any sufficient legal reason left for intending that in a general devise of his lands a testator speaks only of the lands which he has at the date of his will. The chief justice of (Robertson) in delivering his opinion Warner's ex’ors v. Swearingen & wife, fully meets this view, by showing, from the English cases, that “ the civil law rule of making a testator speak at his death and not at the date of his will, not only was never applied to immovable property, but never would have been applied to land or any interest therein, even had a prospective freehold, as well as leasehold interest therein, been always devisable in England; for it seems (he proceeds) not to have been applied to general bequests of chattel interests in land, even though a testator might always in England have effectually bequeathed such interest afterward to be acquired by him. And the principal reasons of this exception from the rule of the civil law are, first, that such an arbitrary rule of construction frequently operates inconsistently with a testator’s intentions; and secondly, that as even a chattel interest in land is not so mutable or fugitive, either in itself or in the proprietorship of it, as that kind of property which is perishable, and in fact movable, neither policy nor convenience required that a general bequest of it should be construed as speaking at the testator’s death, when, in most cases, he intended to speak only when he published his will.” And he came *134 to the conclusion that under the operation of the act of 1785 the true doctrine was, “ As to a. general devise of lands, like that of England respecting the like testamentary dispositions of leasehold interests in land: that is, that prima facie the testator contemplated only such interests as he owned when he published his will. But that if he manifested an intention to devise whatever interests he might own at his death, then and then only his will should be understood as speaking at his death as to land as well as any other property; because then and only then such is made to appear to have been, in fact, Ms will, and here he has a legal right to effectuate such a will.” And the court accordingly held that a devise by the testator of “ the residue of his estate” did not pass lands acquired by him subsequently to the date of his will.
Though it be conceded, therefore, (as I believe it must,) that in a majority of the states whose statutes of wills are, in the particular in question, like our act of 1785, the decisions have gone far towards abolishing the old English rule, and though now, by statute, in England, (1 Viet. ch. 26,) as well as here, a devise of lands, like a bequest of personals, is made to speak as if executed immediately before the death of the testator ; Yet as the authority of Allen v. Harrison has not, (so far as I have seen,) been ever questioned, but, on the contrary, stands supported by the decisions of a sister state, where our act of 1785 has been, in terms, adopted, I feel no hesitation in coming to the conclusion that the will in this case must be interpreted under the rule which holds the testator, no contrary intention appearing, as speaking in respect to his lands at the date of the will.
Applying to the will this test, I have been unable tq discover, in its terms, any thing to raise a serious doubt as to the propriety of the interpretation which the Circuit court has given to it. The words “ every *135 article of property belonging to me,” were used, no doubt, as suggested by the counsel of the appellees, to carry any article of personal property which the testator supposed might, perchance, be held not to be embraced in the description immediately preceding, of “household and kitchen furniture, stocks, plantation tools and implements.” And the words “ the balance of my estate,” if held as intended to embrace lands at all, must, under the requirements of the rule by which the construction of the will is governed, be referred to the balance of the testator’s lands which he owned at the date of his will.
It does not seem to me that the fact that the testator, subsequently to the date of his will, erased the name of Henry E. Scott, and substituted that of John E. Mason, as his executor, is of any value in the controversy. The date of this alteration is not fixed by the verdict; it is only found to be “ subsequent to the original writing of the will.” And as the verdict finds that the testator was on terms of intimacy with Scott up to the time of his (Scott’s) death, which occurred in February 1847, the probability is that the change was made soon after Scott’s death, and before either the adoption of the Code or the purchase of the land, which occurred in March 1849.
I think that the judgment ought to be affirmed.
The other judges concurred in the opinion of Daniel, J.
Judgment affirmed.