Shreck v. Pierce et al.

---

## SHRECK *v.* PIERCE *et al.*

The legal effect of contracts to make title to land, or to deliver a deed for land, under a contract of purchase, is generally that the vendor shall make a *good* title.

As a general rule, it makes but little difference what the precise terms of the contract are; whether the vendor agrees to make title, or a good title; or to make a deed, or a warranty deed; if it appears that he is selling at a sound price, to be paid, or part paid, at the time of conveyance.

In such cases, usually, the vendor, without a nice examination of words, is understood to agree for a good title, and the vendee cannot be put off with a merely good deed.

Where in an action to enforce the specific performance of a contract for the sale of real estate, it appeared that the complainant paid part of the consideration at the time of making the contract; that on the day when the final payment became due, by the terms of the contract, he went to the house of the vendor, to make the payment, and receive his title; that the vendor was absent from home; that the complainant told his business to a brother of the vendor, and offered the money, who replied that he had nothing to do with the matter, and could not receive the money; that at a given time, the parties met by agreement, when the vendor tendered a proper deed, which the complainant declined to receive, and refused to pay the money; that at the time of the tender of the deed, and the refusal to pay the money, the vendor had title to only a portion of the land; that the mother of the vendor, at the same time, tendered a deed for a portion of the land, to which she had the title, but demanded two dollars more per acre, than the contract price; that the title to another portion of the land, was in other parties; that there were incumbrances on the land; that there was no proposition by the vendor, that the purchase money should be applied to the liquidation of incumbrances; and that he subsequently tendered the remaining portion of the purchase money, and demanded a deed; *Held,* That the

Shreck v. Pierce et al.

complainant was justified in withholding the purchase money, and refusing the deed, under the circumstances, and that he had committed no default, by which his rights under the agreement were forfeited.

*Appeal from the Delaware District Court.*

THIS was a bill in chancery, filed at the November term, 1854, to enforce the performance of a contract for the sale of certain lands in Delaware county.

By a written contract of the 25th of October, 1853, John W. Price, agreed to sell and convey to Garret Shreck, four forty acre tracts, described as follows, which are numbered for convenience in future reference: 1st. The southeast quarter of northeast quarter section 36, town 88 north, range 5 west; 2d. The northeast quarter of southeast quarter of the same section; 3d. The southeast quarter of southeast quarter of the same section; 4th. Northeast quarter of northeast quarter section 1, town 87 north, range 5 west; 5th. The southwest quarter of northwest quarter section 32, town 88 north, 4 west. By the agreement, Shreck was to pay one hundred and fifty dollars down, and the remainder, that is to say, eight hundred and fifty dollars, on the first day of May, A.D. 1854. Upon this payment being made, the said John W. was to make to the said Shreck, a good and sufficient title to the premises in fee simple, with warranty.

The bill is brought against John W. Pierce, Clarence D. S. Pierce, Edward S. Pierce, Phœbe Bliss, Clark Bliss, and Peter Case. An agreement as to facts, states the said John, Clarence, and Edward, to be brothers, and the said Phœbe, to be their mother. After the death of her husband, Pierce, she intermarried with Clark Bliss, who is made formal party only.

The making of the contract as above stated, is denied by none. The defence not being of a specific and distinctive character, can be more conveniently developed by a statement of facts—an abstract of the pleadings—and in the opinion of the court.

At the time of making the contract, the parcel of land

Shreck v. Pierce et al.

marked No. 5, was the only one, the title to which was in John W. Pierce. This was conveyed by him to Clarence by deed, dated December 8th, 1854, which was after the commencement of this action. At the same time, the date of the contract, the title to the tracts Nos. 1 and 2, was in Phœbe Bliss. By an instrument dated June 8th, 1853, she (her husband joining) had contracted to convey this land to John and Clarence. The deed was to be made out, on or at any time before the 1st of January, A.D. 1855. But she was not to be held to make the conveyance, unless the obligees should, before that date, pay off a certain mortgage, and also pay two certain "incumbrances," amounting altogether to two hundred and eighty-four dollars, besides interest. By deed, bearing date 8th December, 1854, she conveyed these parcels to the said Clarence. This was after the commencement of the suit. The title to the tracts marked 3 and 4, was in the state at the making of the contract; but Clarence held a contract right to the same, which he afterwards assigned to Edward, for purposes which will be shown hereafter, and title was obtained from the state by Edward, November 1st, 1854, and he conveyed to Clarence, December 4th, 1854.

The substance of the answers is as follows: That of John W. admits the payment of one hundred and fifty dollars, on the delivery of the articles of agreement; but he denies that complainant tendered the $850, in pursuance of the agreement, as alleged by the latter. He denies that he refused to convey the title, until long after the first of May, to wit: until the 11th of August, 1854; but says that he repeatedly urged complainant to receive the title, and pay the $850, which the latter refused to do. He avers, that he informed complainant, that the title to part of the land was in Phœbe Bliss, and part in said Clarence; that he informed him that said Clarence held a contract from the school fund commissioner, for parcels Nos. 3 and 4, and also the southeast quarter of northeast quarter of section 1, town 87, range 5 west, (which is contiguous to and south of said No. 4, and making the east half of said northeast quarter section 1); and that said

Clarence had assigned said contract to said John, to enable him to act as his agent in the sale of the tracts Nos. 3 and 4; and that said Shreck well knew that he (said John) was acting as agent of Clarence, in the sale of these parcels. He further avers, that he informed complainant, that the said Phœbe was the owner of the tract No. 2, and that she had given him and said Clarence, a bond to convey to them, when they paid her a certain sum, and had taken up a certain mortgage to the school fund; and avers, that he showed the two last-mentioned contracts or bonds to the complainant, and that he informed petitioner that the tract No. 5, was mortgaged to the school fund. The defendant then avers, that on or about the 16th of April, 1854, he started for St. Paul, in Minnesota, to obtain from his brother Clarence, an assignment of the contract with the school fund commissioner, embracing the tract No. 4, which it was necessary for him to obtain, in order to get a certificate to enable him to get a title to the above parcel contracted to the complainant, and that although he used due diligence, he was unable to reach home until the 8th of May following; that on the 9th of May, he called on the complainant, and offered to make, or cause to be made, a title to such lands, according to said agreement; that complainant agreed that on the 15th of May, he would meet defendant and said Phœbe, at Delhi, (in the same county), and take a conveyance and pay the money; that they so met, and the said Phœbe tendered to complainant a good and sufficient warranty deed, to "her portion of said land," and this respondent offered to make a title to his and his brother Clarence's portion; but that complainant refused to receive said title, and to pay the money, and they separated. He further alleges, that on the 17th of May, plaintiff agreed to meet respondent at Delhi, and receive the title to plaintiff and Clarence's portion, and then go to the residence of said Phœbe, and receive title to her portion, and there pay the money; that respondent went to Delhi on the day, and made out his title deed, and remained until late in the evening, ready to deliver it to complainant, but he did not come. He then says, that after this, he did not see

complainant for a long time, but supposed that he did not wish to receive the title, and pay the money; and that respondent is now, and ever has been, ready to pay back the one hundred and fifty dollars, paid him on the contract. He then states, that the title to tracts Nos. 4 and 5, is in Edward; that to Nos. 1 and 2, in said Phœbe; and that to No. 5, in himself; that the bond given by Phœbe, to Clarence and himself, is now in her possession; that he has used all honorable means to induce complainant to receive the title, and is ready to repay the money paid him, and prays to be discharged.

In his answer to the supplemental bill, he admits that on the 1st of May, 1854, he was in Minnesota, or on his way returning home, and repeats the reason of his absence, but more fully than before, it being that Clarence's contract with the school fund commissioner, covered more land than that contracted to plaintiff (tracts 3 and 4), and that the commissioner would not give a certificate for a *part* only, so that respondent had need to obtain an assignment from Clarence of the whole contract, in order to fulfill his agreement with plaintiff; and, therefore, he went to his brother in Minnesota, and was unable to return by the 1st of May, and repeats what has been above stated, relative to offering performance and agreeing to meet at Delhi, and what took place there, as before given. This answer was made in November, 1854. He denies that complainant ever offered to pay the $850, till long after the 1st of May, to wit: until the 11th of August, when respondent had assigned the contract to Edward L. by order of said Clarence; he admits, that since the agreement was entered into, the lands have appreciated in value, but denies that this is the reason of his refusal to convey. He says, that when the contract was made, the land was worth more than complainant was to pay. But that Clarence and himself, were compelled to raise a certain amount of money on or before the said 1st of May, and this was their motive for entering into the agreement; and that they have sustained great damage on account of petitioner's refusal to pay. He denies that complainant has made valu-

able improvements, and avers that he has done damage, by cutting timber; and denies that plaintiff has had possession without molestation or warning, but avers that he has been repeatedly warned to leave, and was notified in writing, that unless he settled and paid the rent, legal measures would be taken to get it. He says that Edward L. was not, nor is he since, the real owner of any of said premises; that the reason why he undertook to sell land not belonging to him, was because he was directed to do so by the owner thereof. This answer was made in February, 1855.

In his amended answer to the supplemental bill, he reiterates much of the foregoing matter, and adds that he has no personal knowledge that complainant was at his house on the 1st of May, to pay the $850, but from information, he denies it; that after complainant's failure to perform his contract, respondent offered to refund the $150 paid, and has tendered the same to complainant, and has deposited it with the clerk of the District Court, and that he was authorized to sell the lands and make the contract.

The replication to these answers, in reply to the averment that petitioner was repeatedly urged to take the title and pay the money, says that there were incumbrances upon portions of the land; that for a part said John W. had only assigned contracts of purchase made with the fund commissioner; that the title to a portion was in Phœbe Bliss; that said John W. was by the contract, to make a warranty deed; that he was insolvent, and wholly irresponsible upon his covenants of warranty; and that complainant is entitled to have all outstanding incumbrances cleared off by the money due from him on the purchase; that upon further reflection, he believes the said John W. informed him that the fund commissioners had some claim on some portion of the land, and said John assured complainant, that if he would pay one hundred and fifty dollars, the said respondent would discharge that indebtedness, but he has never so done. He denies that he was informed, that respondent was acting as agent of Clarence, and avers that respondent gave no intimation whatever, that he was not the real owner of the said

land; and he avers it to be false, that he had information that said Phœbe was the owner of, or had any title to any part of the land, or anything therein, further than some sort of a lien for some amount of money, but how much he does not recollect; that said John showed him a bond for a title from her, but that complainant cannot read, and therefore has no special knowledge of its contents. He admits that they met, as alleged, at Delhi, about the 18th of May, 1854, for the purpose stated; but he avers that the said Phœbe utterly refused to give him a deed for the portion whose title was in her, unless he would pay her seven dollars per acre. But he denies making more than one arrangement for meeting respondent at Delhi, and says he has ever been, and still is, ready and willing, desirous and able, to carry out and complete his agreement. He admits that respondent did inquire of him, if he would receive back the one hundred and fifty dollars paid, and that he replied that he would not. Finally, he repeats he cannot read, and that he reposed full confidence in said Pierce, as an honest man.

The rejoinder of this respondent, to the foregoing replication, admits that there were incumbrances on a portion of the land; that for a part, said John W. held assigned contracts of the fund commissioner; that a portion was mortgaged to the school fund; and that the title to a portion was in Phœbe Bliss; but he says that these facts were made known to complainant before, and at the time of making the agreement. He denies insolvency. He denies that complainant has a right to have any of the incumbrances removed, and that he has any right or claim upon the land; and denies that he was to use the $150 in discharge of any of the incumbrances.

The answer of Clarence D. S. Pierce, made in April, 1855, shows that on the 25th of October, 1853, he held a contract from the school fund commissioner for the tracts Nos. 3 and 4, and that he also owned the tracts Nos. 1 and 2, which two last-named tracts were conveyed to said Phœbe, of whom he and said John received a bond, for the reconveyance of the same. He says, he authorized said John to sell "said land,"

so as to raise some money, which he wished to obtain as early in the spring of 1854, as practicable; that in November, 1853, he was informed by letter (he then residing in Minnesota), that said John had agreed to sell the same to complainant, and in June, 1854, he received information that plaintiff had refused to pay for the land, and thereupon he authorized said John W. to assign a portion of it to Edward L., which was in order to allow the latter to pay the amount due the fund commissioner upon the land; said Edward having a claim upon some of the land mentioned in the contract, but not upon that contracted to the complainant. ·He says, lastly, that he is now the owner of all the land mentioned in complainant's bill.

The replication to this answer avers, that if said Clarence was at the time of filing his answer, or now is, the owner of said land, he became so after the commencement of this suit, and with full knowledge thereof; that he paid nothing for them, and that he is not an innocent and *bona fide* purchaser without notice, and therefore has no title as against complainant.

The rejoinder of Clarence alleges, that he held the equitable title to a portion of said land at the time said agreement was entered into, and has since purchased the remainder, for a good and valuable consideration.

The answer of Phœbe Bliss, made November, 1854, denies that she ever sold and conveyed to John W. the land mentioned in the bill, but says that she gave a bond to John and Clarence, that when they should pay her a certain sum, and pay a certain mortgage to the fund commissioner, she would deed to them, or to whom they should direct, the tracts Nos. 1 and 2; that she is now the owner of said lands, and that about the 23d of May, 1854, she tendered to complainant a good and sufficient warranty deed for the same, which he refused to receive.   Exceptions being taken to her answer, she further says, that said John told her of the agreement about the time it was made; that at the time she tendered the deed to complainant, she did demand seven dollars per acre for her portion of the land; that she did not object to

said John's selling the land, and that in August, 1854, said John gave her a number of papers to keep for him, among which was the bond mentioned in complainant's bill.

The answer of Edward L. states that he had not, neither has he, any interest in the lands, but that the contract for a portion of them was assigned to him, to enable him to obtain a deed to another tract belonging to him, but contained in the same contract, and that he has conveyed the land back to Clarence. The court rendered a decree in favor of the complainant, and the respondents appeal.

*Ben. M. Samuels*, for the appellants.

*Clark & Bissell*, for the appellee.

WOODWARD, J.—This was a bill to enforce the specific performance of a contract for the conveyance of certain lands, which for convenience are numbered and referred to, as in the statement of the case : 1st. The southeast quarter of northeast quarter section 36, town 88 north, range 5 west; 2d. The northeast quarter of southeast quarter of the same section; 3d. The southeast quarter of southeast quarter of the same section; 4th. The northeast quarter of northeast quarter of section 1, town 87 north, range 5 west; 5th. The southwest quarter of northwest quarter section 32, town 88 north, 4 west. The contract of sale was made by John W. Pierce, and was to make good title, and to convey with warranty deed, upon the payment of one hundred and fifty dollars down, and eight hundred and fifty dollars on the 1st of May, A.D. 1854. No default is found on the part of the complainant, and no good reason for non-performance on the part of the respondents, and therefore, the decree of this court must be in affirmance of that of the court below. The making of the contract of sale is denied by no one, nor is there any specific ground for defence set up, unless it be that the petitioner did not perform his part punctually ; or that he afterwards declined performance, when the respondents, or some of them, were ready ; or that the principal respond-

Shreck v. Pierce et al.

ent, John W. Pierce, had not the title, and, therefore, could not perform. The last of these implied or supposed grounds of defence, aims to throw the complainant off from the claim of specific performance, to an action of damages for non-performance. We are inclined to the opinion, that a specific performance is the just and true remedy, dictated by the actual state of the case. It will be necessary to look at the facts of the case, and at the position and relation of the respective parties defendant, somewhat in detail.

The contract itself requires no comment. On the 1st of May, 1854, the day for payment and performance, the complainant went to the house where the respondent, John W. Pierce, resided, with eight hundred and fifty dollars in gold, to pay on the contract, upon receiving title. This is only *formally* denied, whilst it is proved by the testimony of Smith, Paul, and Barker, the first of whom actually counted the money, and the others saw it. The complainant did not find John W., but saw Edward, with whom John lived, told him his business, and offered the money. Edward replied, truly enough, that he had nothing to do with the matter, and could not receive the money. But there is an attempt to show argumentatively, that petitioner knew that John was absent at the time. This is not very clearly shown; but what if he did know it? It was much better and easier for him, to do what was incumbent on him for that day, than to trust to proving the excuse for non-performance, namely, the absence of the respondent, John W. It will be remembered, that the reason of this defendant's absence was, that he had gone to Minnesota, to obtain from Clarence, an assignment of the contract with the fund commissioner, so as to enable him to fulfill his agreement with the petitioner. This respondent then alleges, that on his return he offered to perform, and the parties agreed to meet at Delhi, on the 15th of May, and complete the business; that he offered to execute a proper deed, and that the said Phœbe did make and tender a deed of the land held by her, but that complainant refused to pay the money, and receive the deeds. At that time, the obligor, John W., had the title to but one

of the forty acre tracts in himself; this was No. 5. The commissioners' contract for Nos. 3 and 4, was assigned to him, but the title was not in him. Phœbe Bliss, who held the title to tracts Nos. 1 and 2, tendered a deed, which might be a sufficient substitute for one from John. The effect of these offers, is nullified, perhaps, by the fact that John had not yet obtained the title to an important part of the land; but another and more conclusive answer is, that the incumbrances by mortgage and otherwise, for loans or for purchase money, were not yet discharged; nor was there any proposition that a portion of the plaintiff's payment, should be applied to their liquidation.

The legal effect of contracts to make title, or to deliver a deed to land under a contract of purchase, is generally that the vendor shall make a *good title*. As a general rule, it makes but little difference what the precise terms of the contract are—whether the vendor agrees to make title, or a good title—or to make a deed, or a warranty deed—if it appears that he is negotiating to sell at a sound price, to be paid, or part paid, at the conveyance. In such cases, usually, the vendor, without a nice examination of words, is understood to agree for a *good title*, and the vendee cannot be put off with merely a good *deed*. This rule, however, does not preclude those cases where the vendee appears to be purchasing the vendor's title, such as it may be. *Aiken* v. *Sandford*, 1 M. R. 494; *Clarke* v. *Redman*, 1 Blkf. 379; *Clute* v. *Robinson*, 2 J. 595; *Jones* v. *Gardner*, 10 Ib. 266; *Judson* v. *Wass*, 11 Ib., 525; *Tucker* v. *Woods*, 12 Ib., 190; *Robb* v. *Montgomery*, 20 Ib. 13. And the want of an existing capacity to perform, has been held a defence to notes and bonds. *Tyler* v. *Torny*, 2 Scam. 445; *Kenard* v. *Bates*, 1 Blkf. 172; *Warner* v. *Hatfield*, 4 Blk. 392; *Blann* v. *Smith*, 4 Blkf. 517; *Contra, Coleman* v. *Sanderlin*, 5 Humph. 562.

The complainant went to Delhi, prepared to pay his money, and take the title, but he was justified in withdrawing, when he found the condition of things still existing. Besides this, between the first of May and the time of this meeting, an attachment had been levied upon nearly half of

Shreck v. Pierce et al.

the land, in a suit against the respondent John. This circumstance rendered it more than ever necessary that the petitioner should be careful in the transaction. Having done all that is incumbent on his part, he is not thrown into fault by these circumstances; and still another is to be regarded, which is, that at this meeting, the said Phœbe, with the offer of her deed, demanded two dollars per acre more than had been the contract price, for that part of the land which stood in her name. We shall have occasion to revert to this again. It is then shown, that on the 11th of August, 1854, the complainant again tendered the money and demanded a fulfillment of the agreement, which was refused. This shows readiness, and that he did not consider the contract as abandoned. Within three or four months after this, the legal title to all the land is found in Clarence Pierce.

In this state of things, we do not find any default in the complainant, by which he loses his rights under his agreement. On the other hand, there is not seen anything, which can be called a legal excuse for, or justification of, non-performance. The principal respondent, the vendor, had not the legal title in himself, and therefore had not the actual ability to perform, but the question, and it is the main question in the case, is, whether he did not so stand in relation to his co-defendants, as to be able to compel them to fulfill their contracts? and whether the position or relation of them, or of some of them, is not such as to bring them within the reach of this complainant? To answer this question, we must look at them singly, and see what rights they had, and what obligations they were under. Clarke Bliss is but a nominal party, having no relation to the matter, but through his wife, formerly Phœbe Pierce, and he may be passed without further remark. Peter Case was the school fund commissioner, and is but a formal party. This answer discloses that, as such officer, he held a mortgage on part of tract No. 2, for the sum of fifty dollars. He omits to state by whom this was given, and the date of it. He also says that he held a mortgage on tract No. 5, for the sum of ninety-two dollars and fifty cents, dated July 20th, 1854, executed by

John W. Pierce. He does not state when either of these mortgage debts became due. Edward Pierce disclaims having any interest at any time, in the lands, in the bill mentioned, or any of them. He says that the commissioners' contract with Clarence, was assigned to him by the latter, only to enable him to obtain title to another parcel, in which he was interested, and that having done this, he upon the order of Clarence, assigned the contract over to John W.

We come now to Phœbe Bliss, who is more intimately connected with the matter of the bill. She held the title to tracts Nos. 1 and 2. Her answer is not a satisfactory one. She does not answer fully and specifically. She admits making the bond to Clarence and John, but does not give the date, amount, nor term, for which the mortgage therein referred to, was given, nor by whom, nor the amount which she claimed as due her; and when exceptions were taken to the answer, she evades, or at least omits, answering to the most essential portions. But she states *some things* which assist us to a conclusion. Of this character is the statement that she did not object to John's selling the land; that she offered the deed to complainant, on the 15th of May, at the request of John; and that she did demand seven dollars per acre for the land; and it further appears, from the papers in the cause, that on the 4th of December, 1854, she with her husband conveyed these two tracts to Clarence. Thus, there is sufficient to show, that whatever claims she had in regard to the land, were satisfied as far back as the 15th of May, and that from that time she only represented Clarence and John, or one of them. As to her demand of seven dollars an acre for the land, the only remark needed is, that her contract did not leave her at liberty to make such a requirement. She says she was to convey upon the payment of the mortgage and a certain sum due to her. This was irrespective of any rate per acre. But if she had the right to ask this, it was a question between her and the asignees in her bond. Shreck had nothing to do with it. The only effect of this demand, therefore, was to neutralize the tender of the deed to the complainant. We conclude, then, that Phœbe Bliss does not

Shreck v. Pierce et al.

stand in the petitioner's way to a decree for a specific performance.

We come to the consideration next of Clarence Pierce's position. He answers that on the 25th of October, 1853 (the time of the agreement), he held the fund commissioners' contract for tracts Nos. 3 and 4, and owned Nos. 1 and 2; that he conveyed to the said Phœbe, and took the bond to John and himself; that he caused the assignment of the commissioners' contract for Nos. 3 and 4, to Edward, only to enable him to obtain title to a certain parcel, not embraced in this suit. This being done, no interest remained in Edward. As we understand his answer, he says he owned (at least the equitable, or contract title to) parcels Nos. 1 and 2, at the time when the agreement was made with Shreck, and that he assigned it to Phœbe after that. But. upon looking at the answer of Phœbe and Jóhn, we are led into some doubt of the meaning. The answers of Clarence, John, and Phœbe, are none of them full, clear, and satisfactory. On the whole, the conclusion is, that Clarence so answers, and Phœbe does not contradict it, nor does she state anything inconsistent with it. She says that she " is now," (at the time of answering), the owner of the said lands. It would seem that on the 25th of October, 1853, Clarence was the equitable owner under the contracts of purchase from the fund commissioner, or otherwise, of all the tracts named in the bill, except No. 5, and that John had the title to that; that Clarence conveyed to Phœbe, and took the bond to John and himself; that he authorized John to sell the land in order to raise money; and that he stands under equal obligations with John, for the performance of the contract with Shreck. Perhaps little need be said in relation to the answer of John Pierce, as most of the remarks pertinent to it, have been made upon the other answer. He denies the offer of the $850, and denies that he refused performance until long after the first of May. He says he has no *personal* knowledge of Shreck's coming to his residence and making a tender on the first of May, and therefore denies. It will be remembered that he had gone to Minnesota at the time. He disingenu-

ously answers, that he *saw* no money, and that the petitioner never *showed* him any, referring to the tender on the 11th of August, 1854, when the proof shows, that complainant had the gold in a bag, which respondent did see, and that he was told that it was money, besides indications that it was such.   But there are two thoughts presented in his answer, which require a little more notice.   He says, and repeats with emphasis, that he informed the petitioner at the time of the contract, of the state of the title, and of the incumbrances. This forms no defence to the complainant's claim.   It does not lessen the respondent's obligation under his contract, but only shows that he undertook to obtain the title, and to clear off the incumbrances.   Another thought which he presents argumentatively is, that the complainant knew that he was acting as the agent of Clarence.   By this, he means that he was so acting, as to a portion of the land only, for one parcel, No. 5, belonged to himself alone; of Nos. 1 and 2, he and Clarence held the equitable interest jointly, and of Nos. 4 and 5, Clarence was the real equitable owner, whilst the contract for those was assigned to John, to enable him to sell.   The petitioner's knowledge of this agency, constitutes no defence to the bill.   Finally, during the autumn of 1854, and down to February, 1855, after this suit was commenced, we find the legal title to all these lands, including not only those of Phœbe, but those of John, to be centered and vested in Clarence.   In all this transaction, Clarence and John are as one, with authority on the one side, and with full knowledge on the other.   The complainant has been punctual, and has done all that was incumbent on him.   The respondent, John, shows no valid reason for not fulfilling his agreement; and the other defendants by their own answers respectively, show that they hold no position entitling them to object to a performance, and Clarence is in substance identified with John W.

Therefore, it is the opinion of this court, that the decree of the District Court should be affirmed, both generally and in detail.