GEORGE W. FRAZIER AND JENNIE E. FRAZIER, PLAINTIFFS IN ERROR, VS. WILLIAM BOGGS, DEFENDANT IN ERROR.

CONTRACT FOR TITLE PROVIDING FOR GOOD AND SUFFICIENT DEED CALLS FOR A PERFECT TITLE—TIME, AT LAW, IS ESSENCE OF CONTRACT FOR SALE OF LAND—WILLS OF REAL ESTATE, WHAT PASSES BY—AFTER ACQUIRED LANDS—BREACH OF CONTRACT FOR SALE OF LAND.

1. Where a vendor of land in his contract of sale obligates himself to convey "by good and sufficient deed," he does not discharge his covenant by the execution of a deed good merely *in point of form,* but, fully to comply with his obligation, he is bound to make a good and *perfect title* to the land contracted to be sold, and to remove any existing incumbrance, or to protect the vendee against it.

2. A vendee will not be compelled to accept a conveyance under an executory contract until the vendor exhibits a regularly deduced title, free from incumbrances, and apparently sufficient to assure the estate according to the contract.

3. Where a vendor of land sues the vendee *at law* for the recovery of damages for an alleged breach by the vendee of the executory contract of purchase, *time* in such cases, *at law*, is of the essence of the contract, and the vendor, in order to recover, must show himself to have been ready, able and willing to convey by good and perfect title *promptly at the time* expressly stipulated.

4. Under our statute of wills, of November 20th, 1828, in force until the Revised Statutes took effect on June 13th, 1892, no one could by will devise lands located in Florida that he did not own and had no interest in *at the time of the execution of such will.* So long as said statute of 1828 remained in force, *real estate* in Florida, *acquired subsequently to the execution of a will,* did not pass thereby; and this, whether such will was executed in or out of the State of Florida.

5. A will devising real estate is governed by the *lex loci rei sitæ.*

Writ of error to the Circuit Court for Putnam county.

The facts in the case are stated in the opinion of the court.

*C. P. & J. C. Cooper,* for Plaintiffs in Error.

*J. W. Archibald,* for Defendant in Error.

TAYLOR, J.:

The plaintiffs in error, as plaintiffs below, on March 8th, 1886, sued the defendant in error in the Circuit Court of Duval county in an action on the case for damages for an alleged breach on the defendant's part of a contract entered into in writing with the plaintiffs, whereby the defendant agreed to purchase from them at an agreed price and on a certain date a piece of real estate described as lot 2, in block 5, in the city of Jacksonville. By reason of the disqualification of the Circuit Judge presiding over Duval county, in the Fourth Circuit, to try the cause, it was transferred to

Putnam county, in the Fifth Circuit, and was there, by consent, referred to a referee for trial. The trial before the referee resulted in a judgment for the defendant below, and the plaintiffs bring the case here by writ of error.

The sum total of all the errors assigned is, that the referee erred in his findings of the law and facts in the case, and in the rendition of the judgment entered.

The suit was based upon the following contract in writing, executed under seal, between the said parties: "This agreement made and entered into this 6th day of March, 1885, by and between Jennie E. Frazier and George W. Frazier, her husband, of Duval county, Florida, parties of the first part, and Sarah A. Boggs and William Boggs, her husband, of the county and State of New York, parties of the second part. Witnesseth: That in consideration of the sum of money hereinafter mentioned, the said parties of the first part hereby agree to sell and convey by good and sufficient deed, free from encumbrances, except the taxes assessed at the date of this agreement, unto the said parties of the second part, their heirs and assigns, in fee simple, all that piece or parcel of land situate, lying and being in the county of Duval and State of Florida, and known and described as follows: Lot two (2), in block five (5), in the city of Jacksonville, according to the I. D. Hart map of said city, and being one hundred and five (105) feet square. The said parties of the second part hereby covenant and agree to pay for said land the sum of fourteen thousand dollars in the manner following: Five hundred dollars on the execution of this agreement, and thirteen thousand five hundred ($13,500) dollars on or before April 15th, 1885, without interest. The said parties

of the first part to pay the taxes assessed on the property for 1884, and to retain possession of the said property until the balance of the purchase money is paid, and that if default is made in any of the payments aforesaid, principal or interest, in the manner and at the time specified, or if default is made in the payment of taxes, that from and after the date of such default the parties of the first part may consider this agreement annulled and of no effect, and the said parties of the second part shall occupy the said land only with the consent of the said parties of the first part as their tenants, subject to removal from the same under the delinquent tenant act, approved February 16th, 1881, statutes of Florida. It is mutually agreed by and between the parties hereto that the time of payments shall be an essential part of this contract, and that all covenants and agreements herein contained shall extend to and be obligatory on the heirs and legal representatives of the respective parties."

The declaration alleges that the plaintiffs did, on the 15th day of April, 1885, execute to and tender to the defendant a good and sufficient deed of said premises, and were at that date, and on each day from the 6th day of March, 1885, to said 15th day of April, 1885, willing and ready to convey, and did offer to convey to defendant by good and sufficient deed, free of encumbrances, the said premises for and in consideration of defendant paying to plaintiffs the sum of fourteen thousand dollars as he had agreed to do, but that defendant failed and refused to pay the same, or to comply with his said promise and agreement, to the plaintiffs' damage of ten thousand dollars.

To this declaration the defendant plead as follows: 1st. That the plaintiffs were not able at the date of the

contract stated in the declaration, nor up to the time of the commencement of this suit, to execute and deliver to the deféndant a good and sufficient deed to the property mentioned in said declaration, for the reason that the title to said property was, in March, 1879, in Luther D. Alexander, the father of Ethelyn Amelia Alexander, the grantor to the plaintiffs, who died seized and possessed of said property, intestate as to said property, leaving two heirs him surviving, the said Ethelyn Amelia Alexander. and a son named Clayton L. Alexander, and both being his heirs at law, having, after the death of their father Luther D. Alexander, an equal undivided interest in said property. That the plaintiffs at the date of the said contract, and up to the commencement of this suit, had only the title to the undivided half interest in said property, and that the other half interest in the same was owned by the said Clayton L. Alexander, which interest the plaintiffs were unable to convey, or have conveyed, to the defendant, and failed and refused so to do in violation of said contract.

2d. And for a second plea the defendant says that he denied that the plaintiffs were at the time of the making of said contract, and up to the date of the commencement of this suit, ever ready, willing and able to convey to defendant a good and sufficient title to said property, for the reason that said plaintiffs derived their title only from and through one Luther D. Alexander. That said Alexander acquired title to said property on May 22d, 1875; that he held the said title from the date last aforesaid to the time of his death on March 3d, 1879; that between the 22d of May, 1875, and March 3d, 1879, the time of his death, he made no will or evidence affecting said prop-

erty; that he made no republication of his will. That he left him surviving two heirs, *viz:* Clayton L. and Ethelyn A. Alexander, each of whom inherited an undivided one-half interest in said property. That plaintiff Jennie E. Frazier acquired the interest of Ethelyn A. Alexander only. That said half interest said plaintiffs have offered to convey to defendant, but plaintiffs have never been able, ready or willing to convey, or have conveyed, to defendant more than an undivided half interest in said property (the other being at the date of said contract, and up to the commencement of said suit, in said Clayton L. Alexander), but have failed and refused so to do. Upon these pleas the plaintiffs joined issue. Upon the issued thus joined the plaintiffs proved that on the 15th day of April, 1885, they executed a warranty deed in fee in proper form to the wife of the defendant, that, upon its face, purported to convey the whole of said lot, and on that date tendered the same to the attorney for the defendant, but he declined and refused to accept the same, or to pay the agreed purchase money, upon the ground that they, the plaintiffs, had title to only an undivided one-half interest in the lot, and that the other half interest therein belonged to Clayton L. Alexander, and that the plaintiffs could not convey good title to anything but their half interest therein. The plaintiff further proved that the difference between the price agreed to be paid for said lot by the defendant, and the price that said lot could usually and ordinarily be sold for, amounted to between $5,000 and $6,000. The defendant upon his part proved that he had the full amount of the agreed purchase price present when said deed was tendered, and exhibited the same to the plaintiffs, and then and there ex-

pressed his readiness and willingness to pay the same as agreed, provided the plaintiffs could and would convey to them a perfect title to the whole of said lot as they had agreed to do, so that neither Clayton L. Alexander, nor any one else, would have any claim to or interest therein, but that the plaintiffs could not and would not do so, and he therefore refused to complete the purchase.

The contract between these parties stipulated that the plaintiffs would convey to the defendant *all* of the said lot "by good and sufficient deed." It is well settled that in such a case the vendor of land does not discharge his covenant by the execution of a deed good merely *in point of form*, but that, fully to comply with his covenant, he is bound to make a good and *perfect title* to the land, and to remove any existing incumbrance, or protect the vendee against it. Holland vs. Holmes, 14 Fla. 390; Greenwood vs. Ligon, 10 Smedes & M. 615, S. C. 48 Am. Dec. 775; Witter vs. Biscoe, 13 Ark. 422; Shreck vs. Pierce, 3 Iowa, 350; Burwell vs. Jackson, 9 N. Y. (5 Selden), 535. In Souter vs. Drake, 5 Barn. & Ad. (27 Eng. Com. Law), 992, it is held that in every contract for the sale of an existing lease, there is an implied undertaking by the seller (if the contrary be not expressed) to make out the lessor's title to demise; and without showing such title, the seller can not maintain an action at law against the buyer for refusing to complete the purchase. Goddin vs. Vaughn's Executrix, 14 Gratt. 102; Cullum vs. Branch Bank, 4 Ala. 21, S. C. 37 Am. Dec. 725; Clute vs. Robinson, 2 Johnson, 595; Baldridge vs. Cook, 27 Texas, 565; Cooper vs. Singleton, 19 Texas, 260, S. C. 70 Am. Dec. 333. In Hunter, Admr. vs. Bradford, Admr., 3 Fla. 269, text 287, it is

314 SUPREME COURT.

G. W. Frazier and J. E. Frazier v. Wm. Boggs.—Opinion of Court.

said: "A vendee will not be compelled to accept a conveyance under an executory contract, until the vendor exhibits a regularly deduced title, free from incumbrances, and apparently sufficient to assure the estate according to the contract." In the case at bar the contract upon which the suit was based was purely executory. The vendee had never acquired possession of the premises, and did not execute or deliver any independent notes or other obligations for the proposed purchase money. It follows, then, that the plaintiff's right to recover damages for the defendant's alleged breach of his contract to purchase depends upon the solution of the question as to whether the plaintiffs were in fact ready, able and willing to convey to the defendant a *perfect title* to the whole of the lot contracted for. *At law*, in such cases, *time* is generally held to be of the essence of the contract, but, in addition to this, the parties here have expressly made the *time*, stipulated for the performance of their mutual obligations, an *essential* feature of this contract. The plaintiffs, in order to recover, must, therefore, have been thus ready, able and willing to convey such perfect title *promptly at the time* expressly stipulated. Benedict vs. Lynch, 1 Johns. Ch. 370, S. C. 7 Am. Dec. 484; Wells vs. Smith, 7 Paige's Ch. 22, S. C. 31 Am. Dec. 274; Berry vs. Young, 2 Esp. 639; Wilde vs. Fort, 4 Taunt. 334; Fry on Specific Performance of Contracts, secs. 709–710; Tyler vs. Young, 2 Scammon 444, S. C. 35 Am. Dec. 116. The proofs, without conflict or contradiction, show that the plaintiffs derived whatever title they have to the lot in controversy through Luther D. Alexander. Luther. D. Alexander became the owner thereof by deed from one Helen K. Putnam on the 22d day of May, 1875. More

than two years prior to his becoming such owner, Luther D. Alexander made his last will and testament, in March (day not shown), A. D. 1873, in the State of Connecticut, where he then resided. That he died in Jacksonville, Florida, where he usually spent the winter months, about the first of March, A. D. 1879, without having republished, or changed, or altered his said will executed in March, 1873. Said will was duly probated in the State of Connecticut; and, after making divers specific devises and bequests of property, real and personal, located in Connecticut, contained the following clause: "I give, devise and bequeath to my daughter, Ethelyn Amelia Alexander, one-half part of all my personal estate, including Ponemah Mills stock, and one-half of the net income of the brick-yard, and all the rest and residue of my real estate, the use, improvement, income and annual profits of which I have not hereinbefore given to my son, Clayton L. Alexander, howsoever the same may be described, and wheresoever the same may be situated, to have and to hold the same unto her, the said Ethelyn Amelia Alexander, her heirs and assigns, to her and their own proper use and behoof forever." Thomas D. Sayles, of Connecticut, was by the will appointed guardian for the two children of the testator, who were his sole heirs at law, and both of them minors. This will, after being probated in Connecticut, was also probated and admitted to record in Duval county, Florida, and the same party, Charles P. Card, who was appointed administrator *cum testamento annexo* in Connecticut, was also appointed such administrator by the Probate Court of Duval county, Florida. Upon the application of Thomas D. Sayles, as guardian for the minor, Ethelyn A. Alexander, the lot in question was

sold by order of the county court of Duval county, Florida, the guardian in his application for such sale, and the County Judge in ordering it, evidently treating the lot as belonging to the said Ethelyn A. Alexander alone under the above quoted clause of her father's will. At this sale by the guardian the plaintiff Jennie E. Frazier became the purchaser, and on the 24th day of July, 1882, the said Thomas D. Sayles, as guardian for the said minor Ethelyn A., executed a deed to her for the whole of the same, wherein it is recited that he sold and conveyed the said lot only as the guardian for Ethelyn A. Alexander. There is no pretence that any other interest passed by this guardian's sale and conveyance than such interest as the minor Ethelyn A. Alexander had in said lot. The plaintiffs contend that by the quoted clause in Luther D. Alexander's will the whole of this lot was devised to and became the property of the said Ethelyn A. Alexander, and passed by her guardian's sale and conveyance thereof. The defendant contends, on the other hand, that this property in Florida having been acquired by the testator sometime subsequently to the execution of his last will, that, in the absence of any republication of such will, it did not pass by such will and was not affected thereby; and that as to this subsequently acquired real estate in Florida Luther D. Alexander died intestate, and that the property descended by the law to his heirs at law, *viz:* His son, Clayton L. Alexander, and his daughter, the said Ethelyn A. Alexander, in equal proportions; and that the plaintiffs acquired nothing more by such guardian's sale and conveyance than the half interest that so descended to the said Ethelyn A., leaving an undivided

one-half interest and estate therein still outstanding in the son, Clayton L. Alexander.

These facts present the question, whether, at the time of these transactions, a testator could by will devise real estate located in Florida that had been acquired by him *subsequently* to the execution of such will? This question must be answered by the laws of Florida, since a will of real estate is to be governed by the *lex loci rei sitæ.* 1 Jarman on Wills (5th Am. ed.), 1, and cases cited. By the settled rule of the common law, as well as by the uniform construction put upon the English statute on wills of the 34 and 35 Henry VIII, no one could by will devise lands that he did not own and had no interest in *at the time of its execution;* and lands acquired subsequently to the execution of a will did not pass thereby. Bunter vs. Coke, 1 Salk. 237; Broncker vs. Coke, Holt's Rep. 246; Brydges vs. Duchess of Chandos, 2 Ves. Jr. 417; Perry vs. Phelips, 1 Ves. Jr. 251; Thompson vs. Scott & Bostick, 1 McCord's Ch. 32; George vs. Green, 13 N. H. 521; Meador vs. Sorsby, 2 Ala. 712, S. C. 36 Am. Dec. 432; Livingston vs. Newkirk, 3 Johns. Ch. 312; McKinnon vs. Thompson, Ibid, 307; Brewster vs. McCall, 13 Conn. 274; Youngs vs. Youngs, 45 N. Y. 254; Ballard vs. Carter, 5 Pick. 112, S. C. 16 Am. Dec. 377; Raines vs. Barker, 13 Gratt. 128, S. C. 67 Am. Dec. 762. The enabling clause of the statute of wills of 34 and 35 Hen. VIII that authorized devises of lands was as follows: ''That all and singular person and persons having a sole estate or interest in fee simple, or seized in fee simple in coparcenary, or in common in fee simple, of and in and manors, lands, tenements, rents or other hereditaments, in possession, reversion, or remainder, shall have full and free liberty, power and

authority to give, dispose, will or devise to any person or persons (except bodies politic and corporate) by his last will and testament in writing, as much as in him of right is or shall be, all his said manors, lands, tenements, rents, hereditaments, or any of them, or any rents, commons, or other profits or commodities out of or to be perceived of the same, or out of any parcel thereof, at his own free will and pleasure." 1 Jarman on Wills (5th Am. ed.), 58.

Our statute of November 20th, 1828, upon the same subject, that continued in force until the Revised Statutes took effect on June 13th, 1892, was as follows: "Every person of the age of twenty-one years, being of sound mind, shall have power by last will and testament in writing, to devise and dispose of his or her lands, tenements and hereditaments, and of his or her estate, right, title and interest in the same, in possession, remainder or reversion, at the time of the execution of the said last will and testament." McClellan's Digest, sec. 1, p. 985. Because of the far reaching importance of the question under discussion, and from the further fact that it has never before been presented to this court, we have given it the most careful and extended consideration, with a view to discover, if possible, whether our statute of November, 20th, 1828, effected any modification of or change in the English statute of the 34 and 35 Hen. VIII. Our conclusion is, that except in phraseology the two statutes are in legal effect identical. Our statute, as we think, pointedly confines the power to dispose of lands by will to such lands, or to such estate, right, title and interest therein as the testator had in possession, remainder or reversion, *at the time of the execution of such will*. Thus concluding, it follows that, as the testator

here did not own, or have any interest whatever in, the lot in controversy until sometime subsequent to the execution of his last will and testament, the same did not pass by such will, but that as to such lot he died intestate, and it descended at his death to his two heirs at law, Clayton L. and Ethelyn A. Alexander; and that through the guardian's sale of the interest of the said Ethelyn A., the plaintiff derived title only to an undivided half interest in said lot. Our statute further provides that "probate of wills duly obtained and granted by any court in any of the States, Territories or Districts in the United States, or in any foreign country, which relates to property in this State, shall be admitted to record in the aforesaid county courts, and shall, when so recorded, have the same force and effect, as to the disposition of the property thereby devised or bequeathed, as wills executed in this State; provided, the said wills, made out in this State, shall have conformed to the laws thereof in the form and manner of their execution." McClellan's Digest, sec. 8, p. 987.

It is contended for the plaintiffs that the effect of the above quoted section, in cases of wills executed and probated in Connecticut, is to adopt the laws of that State, that empower devises of after acquired lands; and that because the will under discussion had the effect, under the laws of Connecticut, of passing after acquired lands in that State, where it was made and first probated, it would have the same effect in Florida, under this statute, to pass after acquired lands located here. This contention is wholly untenable, and, for its complete refutation nothing more is necessary than to point to the terms of the statute itself that is claimed to have this effect. Its express

provision is, that wills probated in other States shall have the *same force and effect*, as to dispositions of lands located here, not as such wills have *in the State where executed or probated*, but *as though they were executed in this State*. As we have seen, if the will under consideration had been *executed* and *first probated in Florida*, it could not have had the effect of passing this after acquired piece of real estate. This statute does not give it any different or greater effect simply from the fact of its having been executed and probated in another State; but it comes here, if executed with the formalities required by our laws, with identically the same effectiveness to dispose of property located here, as though it had been executed in this State.

It is further contended for the plaintiffs that the whole question of the right of Clayton L. Alexander to an undivided half interest in said lot of land had been adjudicated adversely to the claim of the said Clayton L. in a suit in equity instituted by him in the Circuit Court of Duval county against the plaintiffs for partition of said lot, which suit resulted in favor of the plaintiffs herein in a dismissal of the bill at the cost of the complainant therein, and that such decree of dismissal is an adjudication of the question of the right of the said Clayton L. to an interest in said lot, adverse to the existence of such right, and that it is an adjudication to the effect that plaintiffs have perfect title to the whole of the lot. There is no merit in this contention. In the first place the defendant herein was not a party to such partition suit, and could not be affected thereby unless he had become interested in its subject-matter subsequent to its pendency; but the said suit for partition was not instituted

until December 22d, 1885, more than eight months after the time (April 15th, 1885), when, by the contract of purchase and sale between the parties, it became the duty of the plaintiffs promptly to tender a perfect title to the whole of the lot contracted for; and, as before seen, the case being at law, the *time* fixed for compliance with the contract was essential. The plaintiffs not being prepared then promptly to make to the defendant a perfect title, he, under the circumstances here, was justified in rescinding the contract by refusing to pay the agreed purchase price. The failure of the plaintiffs to be ready at the stipulated time with a perfect title to the whole of the lot contracted for was a breach of the contract upon their part, and they have no right of action against the defendant, at least in this form of suit, for the defendant's non-compliance occasioned by such breach.

It follows from what has been said that the findings and judgment of the referee were proper, and they are, therefore hereby affirmed.