## WERNER v. ZINTSMASTER.

### No. 4809.

Circuit Court of Appeals, Third Circuit.

Sept. 27, 1932.

Rehearing Denied Oct. 19, 1932.

John A. Metz, of Pittsburgh, Pa., Benjamin R. Williams, of Butler, Pa., and Wm. C. McClure, of Pittsburgh, Pa., for appellant.

James Milholland and Alter, Wright & Barron, all of Pittsburgh, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

This is the familiar case of a Florida land speculation in which, after the boom broke, each party looked out for himself with little regard for his contractual obligations. As there is an entire absence of equities running to either party, we approach the matter coldly.

The case has been tried twice. Each time the plaintiff had judgment on a directed verdict; and from each judgment the defendant appealed. We refer to our opinion on the first appeal [41 F.(2d) 634, 637] for the story of the case and shall add, as we go along, only enough to show the bearing of new questions.

Practically the only question in our review of the first judgment was whether the covenants of the parties to convey and pay for the land are dependent or independent. The learned trial judge had held they are independent, that is, the vendee must first pay the purchase price and the vendor might later convey a good title. We were constrained to reverse this decision, holding that the promises of the parties to convey and pay are dependent within the meaning and with the legal consequences of that term. Although the learned trial judge at the second trial followed our interpretation of the contract in this regard, the same matter seems to be raised again on this appeal by the vendee's first question:

"Are the vendor's covenant to convey and the vendee's covenant to pay dependent or independent covenants?"

We hold as before that they are dependent and, in performance, concurrent. This disposes of the first question which really has no place in this appeal except, perhaps, as a basis for the next question, namely:

"Is time the essence of the contract?"

In this connection the defendant-vendee insists, as a ground of the argument presently to be mentioned, that this contract, concerning title, alienation and transfer of land in Florida, is controlled by the lex rei sitæ. We shall assume without deciding that it is. He then cites Florida cases to the effect that where time is of the essence of a contract, the vendor, in order to recover, must have been ready, able and willing to convey the title at the time stipulated, and that as the plaintiff-vendor had at that time no title, he was, even if later he acquired a good title and made tender, without right to maintain a suit to recover the balance of the purchase price. Seemingly, the learned trial judge thought we had held on the first appeal that time was not of the essence of this contract and therefore an imperfect tender could later be perfected and made a valid ground for recovery.

We did not on the first appeal pass upon the question whether time was of the essence of the contract for, as the appellant concedes, that question had not been raised below and was not argued here. What we said was in way of a general statement of the law applicable to contracts for the sale of land on the question of the alleged error of the court in refusing to submit the case to the jury. It

dealt with a situation where the vendor had no title to the land when he contracted to sell it, in respect to which the vendee claimed that, if so, the whole contract was void at the beginning and, if void at the beginning, he could rescind it; and that as the title the vendor later acquired and tendered was bad, he claimed he could also rescind the contract for that reason. Holding that the title later acquired and tendered was bad, we stated that under Florida law a person may contract to sell land which he does not own but he must own it when finally he makes a tender of the deed. Sanford v. Cloud, 17 Fla. 532. Continuing, we said:

"Tender of a defective title may justify a vendee in refusing to accept it * * * but that does not release him from his obligation to accept a good title tendered later, * * * when time is not of the essence of the contract."

There was no occasion to say, nor did we say, that time is not of the essence of this contract. Although intended as a statement of general law on the subject of rescission which we were discussing, the learned trial judge was, we think, justified, by the relation which the statement had to the final decision, in accepting it as a statement of the law of the case, as did the defendant-vendee, who regarded it as an unfortunate mistake on our part.

■ Much of the vendee's brief is accordingly addressed to the converse of the quoted expression, namely; that time is of the essence of the contract and, being so, the vendor, to prevail, must have been ready, able and willing to convey a fee simple title at the time stipulated, evidently feeling that if only he could establish this law as applicable to this contract his defense would be complete, for the vendor was not then able to convey. Although on this appeal we cannot find that the question was raised or decided at the second trial, except as it was perhaps implicit in the court's ruling, we shall pass upon the question whether time is of the essence of this contract within the sense of Florida law.

What does the contract say? That instrument does not say that time is of its essence, yet it is not entirely silent on the subject. It says: "That the time of payment shall be an essential part of this contract." The case of Frazier v. Boggs, 37 Fla. 307, 20 So. 245, 247, on which the vendee relies for the law of Florida on the subject, states the rule:

"At law, in such cases, time is generally held to be of the essence of the contract;

but, in addition to this, the parties here have expressly made the time stipulated for the performance of their mutual obligations an essential feature of this contract. The plaintiffs, in order to recover, must therefore have been thus ready, able, and willing to convey such perfect title promptly at the time expressly stipulated."

In the contract in suit "time of payment" is, as we have shown, "an essential part" of the contract and therefore of the essence of the vendee's engagement to pay, but nowhere is time made the essence of the vendor's engagement to convey. We must construe this contract not as though the parties had been silent on the whole matter of time but, being articulate, on what they themselves said. Unlike the contract in the case of Frazier v. Boggs, where the parties "expressly made the time stipulated for the performance of their mutual obligations" an essential feature of their contract, the parties here expressly made "time of payment * * * an essential part of this contract" and were silent as to time of conveyance. If the parties had been silent in respect to both time of conveyance and time of payment, the general law might, conceivably, have applied; but as they said that time of performance of one promise was of the essence of the contract and said nothing about time of performance of the other promise, they must be held to have said all they had agreed upon. It is very clear we cannot go further than the parties themselves and construe the contract as though they had expressly made time an essential feature of their mutual obligations. We are therefore of opinion that not only was the statement in our first opinion right as a general proposition of law but when applied to the words of this contract (not until later pointed out) it was peculiarly (and perhaps accidentally) apposite. Hence, as we now directly hold that time is not of the essence of this contract, the case gets back to and still stands on the dependent character of the covenants of the contracting parties; the vendor, though not having title at the inception of the suit, may later tender a good title, indeed he must tender a good title before he can recover and on a good tender the vendee must accept it and pay for it.

■ The third question which the vendee-appellant raises is:

"Was the vendor obligated (before recovery) to furnish the vendee * * * 'a good and sufficient deed, with abstract,' showing a fee simple title in himself and clear of all encumbrances?"

He was so obligated because he had promised to do so in these words.

The purpose of an abstract under Florida practice is to bring the title down to the vendor and show it to the vendee. It is in practical effect a guarantee by the issuing abstract company of the title it shows. The abstract, together with the deed tendered the vendee after the last conveyance noted therein, should show, after delivery, full title in the vendee. In Florida purchasers do not ordinarily examine the title of land they are about to buy as they do in many states. The vendee requires of the vendor in their contract of purchase to procure an abstract from an abstract office, of which there is usually at least one in every county, and furnish it to him, so that when he comes to pay all he has to do is to examine the title of the vendor down to the last entry in the abstract conveying title to him and determine whether, since then, the deed tendered is good and the land is free of subsequent encumbrances. Manifestly that is what the parties meant by the requirement of a fee simple title "by a good and sufficient deed, with abstract."

Now what happened in this case was a contract between the vendor and the vendee for the sale and purchase of land, the title of which at the time of the contract, February 13, 1926, was not in Zintsmaster, the plaintiff-vendor. At that date title was in Susan J. Vickers, although in the year before she had contracted to sell the land to Zintsmaster. With the title still in Susan J. Vickers, Zintsmaster contracted to sell the land to Werner, the defendant-vendee, and on his default of payment brought this action in March 1928 against him on the contract in suit; that is, when Zintsmaster made the tender prior to suit and when he brought the suit he, concededly, did not have title. After suit and before trial, namely; in September 1928, the land was sold for taxes (assessed against Susan J. Vickers) and title passed to the State of Florida. When the first trial was pending in May 1929 and with the title in the State of Florida, Susan J. Vickers attempted to convey the land to Zintsmaster, the plaintiff-vendor. The deed was bad under Florida law because her husband had not joined. Again in May 1929, just after the trial and with the title (not in her as we were told at the argument on the first appeal and as we repeated in our opinion but) still in the State of Florida, she, with her husband joining, gave Zintsmaster a deed purporting to convey title to him. All this is shown in the abstract. Before the second trial the plaintiff-vendor tendered this abstract and a deed from himself to the vendee purporting to convey the fee simple. With the abstract itself showing title in the State of Florida, we cannot see how (on a deed from Susan J. Vickers and her husband to Zintsmaster) the tender of an abstract of that kind and of a deed from Zintsmaster to the defendant-vendee could be a tender of a good title.

We are constrained to hold that on this tender the plaintiff-vendor was not entitled to a directed verdict or even to submission of the case to the jury.

The fourth and last question we shall discuss is whether the vendee was obliged to pay taxes assessed (against the property of a stranger to the contract) after 1925 on his agreement to do so?

We think he was; but neither the question as framed nor the answer meets the real situation. It is as follows: By the contract the vendee covenanted to pay $15,000 for the property and "to pay all taxes * * * legally levied or imposed upon said land subsequent to the year 1925." That was his covenant. The difficulty of doing it does not relieve him from his obligation to do it. The question "how, to whom and when was he to pay taxes" is beside the point, except that he was bound to pay them when and where they were due and payable. He did not pay them then or at any other time. After his default, the land (with title never in the vendor) was sold for taxes and title passed to the state. The vendor says that by reason of the vendee's breach of his covenant to pay the taxes, he had put the title to the land, which he (the vendor) had engaged to sell, beyond his reach and therefore the vendee cannot complain in this suit for the purchase price that the vendor has not tendered or cannot deliver good title. In other words, the vendor's position is that the vendee must pay him the consideration for the property, even if, in return, he (the vendor) cannot convey title because by the vendee's act of not paying taxes he has—as though de son tort—made delivery of title difficult or impossible.

This tax question evidently was not raised before the learned trial judge as it is raised here but, dealing with the tender of a good title and regarding the taxes in the nature of a lien imposed or permitted by the vendee, the learned judge properly held that the taxes "would not affect the title that the plaintiff was under obligation to tender," meaning that tender of a good title, though encumbered by taxes which the vendee had

engaged to pay, would fulfill the covenant. In our view the vendee's engagement was to pay taxes as they fell due until the time of conveyance in the future and that this undertaking was a part of the consideration; and that his failure to pay taxes to the tax collectors through these years was a breach of his covenant in that respect, for which the vendor, were he, for any reason, required to pay them, could recover by suit exactly as he could recover the balance of the money consideration of $15,000. But the vendee's breach of his covenant to pay taxes did not relieve the vendor of his covenant to convey a fee simple title free of encumbrances except the lien of these taxes; his ability and readiness to do which are, after all, a condition precedent to his recovery of the consideration or any part of it.

The judgment below is reversed with direction that a venire de novo issue and proceedings thereafter be had conformably with this opinion.