GODFREY v. ROSENTHAL *et al.*

1. Plaintiff and defendant contracted for an exchange of property, the former to convey mining property and the latter to convey a lot. The deeds were to be delivered on plaintiff receiving the receiver's certificate for his property. After the issuance of the certificate, defendant under the agreement, instituted a suit in plaintiff's name, and at his expense,

for the removal of a cloud on the title of the mining property, obtaining a decree for its removal. Thereafter defendant delivered his deed conveying the lot. Held that, as the delay in the delivery of the deed from the date of the receivers certificate to the date of the decree removing the cloud was assented to by plaintiff, he could claim no damages therefor, nor for any further delay in the delivery of the deed, without showing that he sustained damages.

2. Under Rev. Civ. Code, § 2347, providing that an agreement for the sale of property cannot be specifically enforced in favor of a seller who cannot give a title free from reasonable doubt, a purchaser of real estate does not subject himself to an action for damages for refusing to accept the same while there is an apparent cloud on the title, so that it is not free from reasonable doubt.

3. In an action for damages for the breach of a contract for the exchange of real estate, occasioned by defendant's failure to convey, the existence of an outstanding mortgage on plaintiff's property was a defense; the question as to whether the mortgage was barred by limitations being an open question, and it also depending on other considerations, such as part payment, payment of interest, etc.

4. In an action for damages for the breach of a contract for the exchange of real estate, occasioned by the failure of defendant to convey, the existence of an outstanding mortgage on plaintiff's property is a defense, where it was shown that plaintiff assured defendant that the title was free from incumbrances, though the contract did not call for a warranty deed from plaintiff.

(Opinion filed Dec. 2, 1903.)

Appeal from circuit court, Lawrence county. Hon. W. G. RICE, Judge.

Action by Peter Godfrey against Sol Rosenthal and another. From a judgment for plaintiff, defendants appeal. Reversed.

*Martin & Mason*, for appellants.

A vendee in a contract for the sale of land is not ordinarily

entitled, upon breach and failure to convey, to recover of the vendor, damages measured by the goodness of his bargain, or the financial benefit that would result from performance. It is only when the vendor is for some reason chargeable with bad faith in the matter that recovery beyond nominal damages on that account can be had. Note, 52 L. R. A., p. 241; 2nd. Sedgwick on Damages, p. 207; Northridge v. Moore, 118 N. Y., 419; 23 N. E. Rep., 570; Pumpelly v. Phelps, 40 N. Y., 60; Conger v. Weaver, 20 N. Y., 141; Gerbert v. Congregation, etc., 35 Atlantic, 1121; Boyd v. Delancey, 17 App. Div., 567, 45 N. Y. Sup., 693; Dumars v. Miller, 34 Pa., 317; Hertzog v. Hertzog, 34 Pa., 428; Morgan v. Bell, 3 Wash., 554, 28 Pac., 925; Dady v. Condit, 58 N. E. Rep,, 901; Violet v. Rose, 58 N. W. Rep., 221; Tracy v. Gunn, 29 Kan., 508.

An agreement for the sale of property cannot be specifically enforced in favor of a seller who cannot give to the buyer a title free from reasonable doubt. Comp. Laws, Sec. 4635; Fetter Equity, p. 277; 22 Enc. of Law, 1st Ed., p. 948; Wesley v. Eells, 177 U. S., 370, 20 Sup. Ct. Rep., 663.

A partial failure of title is a sufficient defense Black Hills Nat. Bank v. Kellogg, 4 S. D., 312; 56 N. W., 1071.

No brief on file for respondent.

CORSON, J. This is an action to recover damages alleged to have been sustained by the plaintiff by reason of the breach of an agreement on the part of the defendant Rosenthal to convey to him certain real estate in the city of Deadwood. The complaint set out the agreement between the plaintiff and the defendant Rosenthal, dated June 6, 1900, on which the action is based, and in which it was recited that the plaintiff

did on that day sell to the said Rosenthal an undivided one-half interest in certain mining claims known as the "Dead-broke Properties" including a mill site and a 10-stamp quartz mill thereon, with machinery, tools. etc,, and that the said Rosenthal had on that day sold to the said plaintiff a lot and building on Main street, in Deadwood, described therein, upon the following terms and conditions: (1) Plaintiff to pay to Rosenthal the sum of $500.; (2) deeds to be placed in escrow for the said properties, together with an assignment of an outstanding lease on the Deadbroke properties, executed May 15, 1899, by plaintiff and partner to R. M. Maloney; (3) the said Rosenthal was to proceed at once to patent the Deadbroke mining claims, paying all expenses therefor, and as soon as receiver's receipt was issued for said claims the said mining deed and assignment of lease were to be delivered to the said Resenthal, and at the same time the deed from Rosenthal was to be delivered to plaintiff. There were other provisions not necessary to be set out in this opinion. Plaintiff, in his complaint, alleges that the deed mentioned in the contract and the assignment of the lease were placed in escrow with the American National Bank, to be delivered when the receivers receipt for the Deadbroke properties was issued, and that the plaintiff had complied with all the conditions of the foregoing agreement on his part to be performed. It is further alleged that on or before November 26, 1900, the receiver's receipt was duly issued for the said mining properties, and notice thereof given to the defendants; that thereupon the plaintiff demanded performance of the escrow agreement from the defendant bank, but that by the procurement of the defendant Rosenthal the bank refused to deliver the deed running to the plaintiff until March 5, 1901. The plain-

tiff further alleges that on November 26, 1900, when the deed
to the Main street property should have been delivered to him,
he had a purchaser ready, able and willing to purchase from
him a one-half interest in the said property for the sum of
$6,000, and that defendant Rosenthal knew that he had such
purchaser on June 6, 1900, at the time the contract was en-
tered into; that, by reason of the defendant's delay in deliver-
ing said deed, plaintiff lost the opportunity to make the sale,
and that the property could not on March 5, 1901, when said
deed was delivered, be sold for more than $8,000 for the entire
interest, whereby the plaintiff claims that he was damaged in
the sum of $2,000. For answer the defendant Rosenthal al-
leged that his assent to the contract of June 6th was given
under the influence of mistake and misrepresentation as to the
plaintiff's title to the Deadbroke properties caused by plaintiff's
representations that the same was free and clear from all in-
cumbrances, which representation was false, in that there was
outstanding against the mill site included in the purchase
from plaintiff a mortgage for $15,000. Defendant Rosenthal,
as a further defense, among other things, alleged that plaintiff
and Rosenthal on November 27, 1900, agreed that Rosenthal
should cause suit to be brought in the name of the plaintiff and
his partner to clear the records of the $15,000 mortgage, and
remove the cloud from the title to the Deadbroke properties,
such suit to be prosecuted at plaintiff's expense; that the same
was instituted accordingly, and that a decree was rendered
removing said cloud from the title on the 14th day of Febru-
ary, 1901; that thereupon, on March 5, 1901, a suit instituted
by the plaintiff against the defendants to compel delivery of
the deed to the said Main street property was dismissed by

stipulation, and the deed was ·by. consent of both parties delivered and accepted by the plaintiff in full discharge of the obligations of the parties thereto under the contract hereinbefore referred to. The case was tried to a jury, and a verdict rendered against the defendant Rosenthal for $1,070 damages, and against the said bank for $1, and from the judgment and order denying a new trial the defendants have appealed.

The defendant seeks a reversal of the judgment of the court below upon the following grounds: (1) That there was no breach of the contract shown; (2) that the court erred in its refusal to admit in evidence the record of the $15,000 mortgage; (3) that the court erred in its refusal to admit in evidence the record of the action for specific performance instituted by the plaintiff against the defendant Rosenthal, and the judgement therein; (4) that the court erred in its instruction to the jury given at the request of the plaintiff. In the view we take of the case, it will only be necessary to consider the second ground upon which a·reversal is sought, namely, that the court erred in its refusal to admit in evidence the record of the $15,000 mortgage. The record of the mortgage offered in evidence tended to prove that, so far as the record disclosed, the plaintiff's property was in fact incumbered, or apparently so, by the $15,000 mortgage of one Thayer.

It is shown by the undisputed evidence that at about the time the Rosenthal deed was to be delivered, November 26, 1900, it was agreed between the· plaintiff and appellant that appellant Rosenthal should institute an action in the name of the plaintiff and Mr. Nelson to cancel said mortgage, and appellant thereupon brought the action resulting in a judgment

in favor of the plaintiff on February 14, 1901. It would seem, therefore, that the delay in the delivery of the deed from November 26th to February 14th was assented to by the plaintiff, and that as no damage was shown to have been sustained by the plaintiff between February 14th and March 5th, when the deed was delivered, the verdict and judgment should have been for the defendant. But, independently of this agreement and assent on the part of the plaintiff; we are clearly of the opinion that the appellant was not required to allow his deed to the plaintiff to be delivered until the cloud had been removed from the title.

Section 2347 of the Revised Civil Code provides: "An agreement for the sale of property cannot be specifically enforced in favor of a seller who cannot give to the buyer a title free from reasonable doubt." If the specific performance could not be enforced for the reason that there was an apparent cloud upon the title by which the title was not free from reasonable doubt, the purchaser would not be under obligations to accept such title, and would not subject himself to an action for damages for refusing to accept until the same was perfected and the cloud removed. Black Hills National Bank v. Kellogg, 4 S. D. 312, 56 N. W. 1071. And the rule laid down by our Code seems to be the general rule. In 22 Am. & Eng. Enc. of law, 948, the rule is laid down that "the vendor must be ready and able to convey a marketable title, which has been defined to be a title that is free from reasonable doubt to all the land he has bound himself to sell." It is further said in a note: "A marketable title is one that is free from reasonable doubt. The purchaser is not compelled to take property the possession of which he may be compelled to defend by litiga-

tion.    He should have a title  that will  enable him  to hold  his
land in peace, and, if he wishes to sell, be reasonably sure that
no flaw or doubt will arise to disturb its market value." Vought
v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am.
St. Rep. 634.   In  Wesley v. Eells,  177 U.  S. 370, 20 Sup.  Ct.
664, 44 L. Ed. 810, the supreme court of the United States uses
the following language:   "Again, it is a settled rule of  equity
that the defendant in  a suit brought for  the specific  perform-
ance of  an executory contract will not  be compelled  to take a
title about which  doubt may  reasonably exist, or  which  may
expose him to litigation.    *   *   *   It is not necessary that he
should satisfy the court that the title  is defective,  so  that he
ought to prevail at law.   It is  enough if  it appear  to be sub-
ject to adverse claims which  are of such a  nature as may reas-
onably  expected  to expose  the purchaser  to controversy to
maintain his title or rights incident to it.   *   *   *   He ought
not to be  subjected, against his  agreement or  consent, to the
necessity of  litigation, to remove  even that which is only a
cloud upon his title."

Upon  what  theory  the court  excluded the record  of the
mortgage  we are  not  advised, but, if it was upon the theory
that  the  mortgage was barred by the statute of  limitations,
the court clearly erred.   The court was not authorized to say,
in view of the provisions of the statute of limitations of this
state, that the mortgage was barred by the statute, or did not
constitute a cloud upon the plaintiff's title.   The question as to
whether or  not a  mortgage is barred by the 10 years' or 20
years' statute of  limitations has not been  settled by any decis-
ion of this court, and cases are now pending before it in which
it is  claimed on one side  that a mortgage under  seal is only

barred by the 20-year statute of limitations prescribed for sealed instruments, and on the other side that mortgages, though sealed instruments, come within the 10-years statute of limitations. The question, also, of whether or not the mortgage was barred by the statute of limitations would depend upon many other considerations, such as part payment, payment of interest, legal extension of time, etc., so that no prudent man would have been justified in taking the property until the cloud was removed from the title. The title with the mortgage of record was not free from reasonable doubt. A mortgage has been held such a defect in the title as would prevent enforcement of specific performance. Swihart v. Cline, 19 Ind. 264; Hinckley v. Smith, 51 N. Y. 21.

If the court excluded the evidence of the record of the mortgage on the ground that the contract did not call for a warranty deed on the part of the plaintiff, it was equally an error as the evidence clearly shows that the plaintiff repeatedly assured Rosenthal, in answer to his inquiries, that the title was free and clear from all incumbrances except the paramount title of the United States. This representation was clearly untrue, as shown by the record of the mortgage offered in evidence. When Rosenthal discovered that the representations were untrue, he had the right to withhold his deed until the incumbrances appearing of record should be removed, and the plaintiff was entitled to no damages for the delay in delivering the deed while the incumbrance still appeared of record. In discussing a similar question the Supreme Court of Missouri concludes as follows: "We do not think the fact that the defendants were to take a quitclaim deed is of any controlling importance. Fry says: 'The circumstance that the vendor

sold "with all faults," though it may serve to put the purchaser on his guard, will not enable the vendor to say that the purchaser·did not rely on his representation or prevent the purchaser from avoiding the sale, if the representation was false.' Fry on Spec. Perf. § 455. Our conclusion is that the plaintiff is not entitled to specific performance so long as the property remains incumbered by these tax bills, amounting to a hundred and fifty dollars or thereabouts." Isaacs v. Strainka, 95 Mo. 517, 8 S. W. 427. It clearly appears in the case at bar that Rosenthal did rely upon the representations made by the plaintiff. The same rule applies to actions for damages as for actions for specific performance, Frazier v. Boggs, 37 Fla. 307, 20 South. 245.

In any view of the case, therefore, the exclusion of the record of the mortgage was clearly error, and for this error the judgment of the circuit court must be reversed, and it is so ordered.