**Keith STUGELMAYER, Plaintiff, Appellant and Cross-Respondent,**

v.

**Edgar D. ULMER and Mercedes M. Ulmer, husband and wife, Defendants, Respondents and Cross-Appellants.**

**Nos. 11943, 11944.**

Supreme Court of South Dakota.

Argued June 10, 1977.

Decided Dec. 7, 1977.

Michael T. Hogan and Thomas A. Kolker, of Maloney, Kolker, Fritz, Hogan & Johnson, Ipswich, Paul O. Kretschmar, Eureka, for plaintiff, appellant and cross-respondent.

Kennith L. Gosch, of Bantz & Gosch, Aberdeen, for defendants, respondents and cross-appellants.

DUNN, Chief Justice.

This is an action for specific performance of an option to purchase certain farm lands leased by defendant Edgar Ulmer to the plaintiff and to set aside a deed from the defendants to Mercedes Ulmer. In the alternative, the plaintiff sought damages for defendants' refusal to convey the property in accordance with the option. Edgar Ulmer counterclaimed, alleging the plaintiff wrongfully converted a Holstein bull entrusted to him, and demanded compensatory, treble and punitive damages.

Defendants' motion to dismiss was converted to a motion for summary judgment by the parties. Depositions were taken and a briefing schedule was set up. Before all the briefs were submitted, the trial date arrived. Following trial to the court, the Circuit Court for the Fifth Judicial Circuit found for the defendants and dismissed the complaint, while granting the counterclaim and awarding compensatory damages and interest. The judgment was entered, but later opened to amend certain findings of fact and conclusions of law. Plaintiff's motions for judgment n. o. v. and for a new trial were denied. Plaintiff appeals the judgments before and after amendment

and defendants appeal the court's failure to make a finding as to punitive damages. We affirm the judgment of the trial court in dismissing the complaint, but remand for a finding on punitive damages as to the counterclaim.

The facts of this case are complicated and sharply disputed. In 1971, the defendants bought the land in question, consisting of about 320 acres held in joint tenancy. By an instrument dated February 22, 1972, and signed by Edgar Ulmer, but not Mercedes Ulmer, the plaintiff agreed to lease the property for three years, with payments due in March and September of each year. The lease included an option to purchase the land "at anytime for a price of $59.00 per acre."

Payments were made on the lease in 1972. Problems began with the March 15, 1973 payment. Plaintiff testified that he met with Mr. Ulmer at a sale barn in Ashley, North Dakota, on March 7th. They agreed to return in a week for payment of the 1973 spring rent. Plaintiff claimed he was at the sale, but that Ulmer did not show up. One of the owners of the sale barn testified that there was no sale at the barn on March 14, 1973. When the March 15th payment was not made, Ulmer notified the plaintiff both verbally and in writing on March 21st that he was electing to terminate the lease for nonpayment of rent, and he refused a tender of the rent made by plaintiff after oral notice of termination was given. Mr. Ulmer did offer to rent the land to plaintiff without the option to buy for the years 1973 to 1975.

The plaintiff continued to farm the land and pay rent, but Mr. Ulmer pointed out several times that he was not accepting the rent under the old lease-option agreement. On September 6, 1973, the defendants conveyed to Mercedes Ulmer one-half of the property, no consideration being given for this transfer.

In September of 1973, and again in September of 1974, the plaintiff sought to exercise the option to purchase. The defendants refused and plaintiff then deposited the purchase money with a local bank and sent the defendants notice of his election to exercise the option. Thereafter this suit was commenced.

The counterclaim concerns the loan of a bull by Edgar Ulmer to the plaintiff in 1972. According to Ulmer, the loan was supposed to last until July of 1973, but an extension of time was given. Ulmer testified that the plaintiff told him over the phone that the bull had "croaked" and that the carcass had been picked up by the Aberdeen Rendering Company. The sheriff testified that plaintiff's wife had told him the same thing, a statement she denied at trial. Plaintiff admitted in his deposition that he had borrowed a bull, but contended that Ulmer had reclaimed it. At trial, however, he said he did not remember borrowing Ulmer's bull and denied saying that it had croaked and had been picked up by the rendering company. An agent of the Aberdeen Rendering Company testified that no bull carcass was picked up at the plaintiff's farm that year.

The trial court concluded that although the lease-option was not terminated the plaintiff was not entitled to specific performance or damages. Specific performance was denied because the plaintiff had knowledge of Edgar Ulmer's inability to convey the entire tract and because it would be difficult, impractical and inconvenient to grant such a remedy. Damages were denied because the case was not sufficiently exceptional to merit such an award. Defendant Ulmer was awarded $800 compensatory damages, plus interest, on his counterclaim, but no finding as to punitive damages was made.

██ The equitable remedy of specific performance is addressed to the sound discretion of the court to be granted or denied according to the facts and circumstances in each instance. The decision of the trial court is not to be disturbed unless there has been an abuse of discretion. *Renner v. Crisman*, 1964, 80 S.D. 532, 127 N.W.2d 717; *Dolan v. Hudson*, 83 S.D. 144, 156 N.W.2d 78; *Skjoldal v. Myren*, 1971, 86 S.D. 111, 191 N.W.2d 809. We do not feel that the trial court abused its discretion in this case.

The plaintiff had constructive knowledge that Mr. Ulmer was not the sole owner of

the land in question and that it was held in joint tenancy with Mercedes Ulmer at the time the lease-option agreement was signed. Mercedes at no time signed the agreement, and, as this court pointed out in a similar situation:

"It follows that in this action for specific performance, in the absence of any contract on her part to convey, her knowledge of transactions between her husband and the plaintiffs, even though acquiesced in and not objected to by her, are wholly immaterial as affecting her personal rights and obligations, and cannot be made the grounds for specific performance as against her. There can be no implied contract for a conveyance of real property enforceable in a court of equity, under the provisions of the statutes relating to conveyances of real property." *Stenson v. Elfmann*, 1912, 29 S.D. 59, 61–62, 135 N.W. 694, 696.

SDCL 21–9–2 states that "the following obligations cannot be specifically enforced:

\*       \*       \*       \*       \*       \*

(4) An agreement to perform an act which the party has not power lawfully to perform when required to do so;

(5) An agreement to procure the act or consent of the wife of the contracting party, or of any other third person; \*   \*   \*"

Since Edgar Ulmer could not lawfully compel his wife to convey her interest in the land and since the plaintiff was aware of the fact that Edgar could not convey complete title to the property, we conclude the trial court did not abuse its discretion in refusing to grant specific performance and set aside the deed dated September 6, 1973, from Edgar and Mercedes to Mercedes Ulmer.

The plaintiff next asks the court to grant specific performance as to Edgar's share in the property with an abatement of the purchase price. This court answered a similar argument in *Kaiser v. Klein*, 1912, 29 S.D. 464, 137 N.W. 52 this way:

"The doctrine that in case the vendor is unable to comply with the contract by reason of not having a legal title to all the land sold, yet that the vendee is entitled to a specific performance of the contract for such as lies in the power of the vendor to convey with compensation for the residue, is undoubted. This principle, however, is qualified in its operation and cannot be invoked by a purchaser who at the time of the making the contract had notice of the fact that the vendor had a limited interest in the land." 29 S.D. 475, 137 N.W. 53, 54.

Because the plaintiff had knowledge of Edgar's limited interest in the land and in light of the trial court's findings relating to the hardship and difficulty such a remedy would bring about, we conclude that the trial court did not abuse its discretion in denying partial specific performance with an abatement from the purchase price. It is also significant to note that the plaintiff has never, either by his pleadings or in his testimony, indicated a willingness to take partial specific performance, and this is an essential prerequisite to such an award. *Hughes v. De Barberi*, 1961, 171 Neb. 780, 107 N.W.2d 747; *Fudge v. Byrom*, 1974, 191 Neb. 363, 215 N.W.2d 71.

■ Finally, we must determine whether the trial court erred in failing to grant damages in lieu of specific performance. Since SDCL 15–6–2 abolished the distinction between actions at law and suits in equity, the courts of this state are justified in retaining an action for specific performance to determine whether an action for damages will lie in lieu of the remedy of specific performance. *Leisch v. Baer*, 1909, 24 S.D. 184, 123 N.W. 719; *Skjodal v. Myren*, 1971, 86 S.D. 111, 191 N.W.2d 809.

■ SDCL 21–2–3 sets the amount of damages for breach of an agreement to convey real property as follows:

"The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case·of bad faith, the difference between the price agreed to be paid, and the value of the estate agreed to be conveyed, at the time of the

breach, and the expenses properly incurred in preparing to enter upon the land."

Using this measure of damages, we conclude that the plaintiff did not suffer any reimbursable harm. The purchase price was never accepted by Edgar Ulmer, so the plaintiff has not lost any money. No evidence was offered concerning expenses incurred in examining the title and preparing the necessary papers. There was no showing of bad faith on the part of Edgar Ulmer which would justify an award of damages in the amount of the difference between the price agreed on and the value of the property. The plaintiff knew that Edgar did not have full title to the property, so there is no question of deception or fraud of the plaintiff, and the conveyance of the land to Mercedes was made after Edgar in good faith believed that the option to purchase had been cancelled. The trial court did not abuse its discretion in refusing to award damages. See the annotations at 48 A.L.R. 50–51 and 68 A.L.R. 147–148.

■ The plaintiff urges this court to remand the case to the trial court for further determination of damages incurred in examining the title and preparing the necessary papers. This court has held that the burden of proof as to damages is on the buyer in an action for damages for the breach of an agreement to convey real estate. *Filbert v. Hamilton*, 1921, 43 S.D. 626, 181 N.W. 838. The plaintiff failed to show any damages as a result of the breach and should not be given another opportunity to do so.

In light of our conclusions, it is not necessary to deal with the other issues raised by the plaintiff on this appeal. For the reasons stated, we affirm the judgment of the trial court dismissing the complaint.

■ Defendant Edgar Ulmer has appealed the judgment of the trial court on his counterclaim, alleging that the failure to make·a finding as to the award of punitive damages was reversible error. The law in this state, as·set out in *Taylor v. Vandenberg*, 1902, 15 S.D. 480, 90 N.W. 142, and reiterated in *Foss v. Foss*, 1942, 68 S.D. 262, 1 N.W.2d 588, is that the trial court has a duty to make findings upon every issue raised by the pleadings and its failure to do so is error. The refusal or failure to find, however, may not be grounds for reversal if no prejudice to any substantial right is caused. *Ellens v. Lind*, 1937, 65 S.D. 620, 277 N.W. 40.

■ In determining whether a substantial right has been prejudiced, this court has looked to whether sufficient evidence exists in the record on which a finding in favor of the party alleging reversible error could be made. *Ellens v. Lind*, supra. The court found as a matter of fact that Ulmer had loaned Stugelmayer the bull free of charge. It also found as follows:

"27. In mid-April of 1974, the Defendant, Edgar D. Ulmer, after demanding the return of his bull, was told by the Plaintiff that the bull had 'croaked' two weeks previously from 'blackleg' disease and the carcass had been picked up by the Aberdeen Rendering Company. The Aberdeen Rendering Company did not pick up a dead bull from the Plaintiff's farm. Plaintiff offered no other explanation as to what happened to the bull and the Plaintiff has never returned the bull, and refuses to return the bull."

While there was a conflict in the evidence in regard to this matter, this court must accept the finding of the trial court unless it is clearly erroneous. The trial court chose to believe the version of the facts offered by Ulmer and the sheriff, and this conclusion was supported by substantial evidence in the record. These facts are sufficient to support a possible award of punitive damages under SDCL 21–3–2. Such damages may be awarded when a defendant has been guilty of oppression, fraud or malice, actual or presumed, and we believe Ulmer under these facts was entitled to a finding on that issue. We remand for a finding on the issue of the award of punitive damages.

All the Justices concur.