**Paul H. AAMOT and Glenadene Aamot, Plaintiffs and Appellees,**

v.

**Everett ENEBOE and Evelyn Eneboe, Defendants and Appellants.**

**No. 14382.**

Supreme Court of South Dakota.

Argued May 21, 1984.

Decided July 11, 1984.

Martin Weeks of Bogue, Weeks & Rusch, Vermillion, for plaintiffs and appellees.

Richard Braithwaite, Braithwaite Law Offices, Sioux Falls, for defendants and appellants.

DUNN, Justice.

This is an appeal from a decree of the trial court setting aside an arbitration award and ordering specific performance of a real estate contract. We affirm.

In 1972, Everett and Evelyn Eneboe acquired a quarter section of land in Lincoln County, South Dakota, as joint tenants. The following year, Everett decided to sell the land and he entered into negotiations with Paul and Glenadene Aamot. An oral agreement between the parties for sale of the land was later reduced to writing. The written contract stated, in part: "Agreement between Everett and Evelyn Eneboe, Canton, South Dakota and Paul Aamot, Beresford, South Dakota, purchaser, entered into this day March 28, 1974." The agreement went on to describe the real estate, purchase price, interest rate, payment schedule, etc. It was signed by Paul and Glenadene Aamot and Everett Eneboe, but was never signed by Evelyn Eneboe. Evidently, Evelyn was not aware of her joint interest in the real estate until sometime in 1980, although she was fully aware of the contract. Aamots took possession of the land and made payments as called for by the contract. In the years 1978, 1979, 1980, and 1981, all four parties signed documents acknowledging the payments made and received.

In the spring of 1980, Paul told Everett that he wanted to pay the balance of the contract price, but Everett refused to accept such payment. Thereafter, Aamots commenced an action for specific performance of the contract. Not long into the action, the parties agreed to submit the case to mediation and arbitration. An arbitration agreement was drafted, which

called for Christian reconciliation between the parties; it named Pastor Luther Anderson as mediator and a panel of six church members as arbitrators. The parties agreed to dismiss all pending legal actions and to waive rights they might have to maintain future legal actions. The agreement set forth four specific "issues subject to mediation-arbitration" to be considered by the arbitrators.

The initial attempts to bring about a settlement through mediation failed, so the case was submitted to arbitration. The arbitration panel met with the parties on September 1, 1981; each side was allowed one hour before the panel, at which time they stated their positions and answered questions. No attorneys were present, since the mediator felt their presence would not be appropriate, and no cross-examination was allowed. On September 3, 1981, the arbitrators sent written notice of their decision to the parties. The result was an equal division of the property: 80 acres to Aamots and 80 acres to Eneboes, with Eneboes getting first choice as to which 80 acres to take. At a later time, Aamots discovered that Everett Eneboe had, prior to the hearing, spoken with five of the six arbitrators concerning issues to be heard by the panel.

Aamots refused to accept the decision of the arbitrators and brought suit to vacate the award and compel specific performance of the real estate contract. Court trials were held on each phase of the controversy, with the trial court entering findings of fact and conclusions of law after each phase. The court granted the relief sought by the Aamots.

On appeal, Eneboes raise eight issues, although for clarity these may be classified into two categories: first, they claim the trial court erred by vacating the award of the arbitration panel; second, they claim the trial court erred by ordering specific performance of the real estate contract.

We begin by examining the issues dealing with the setting aside of the arbitration award. On the first issue, the trial court found that the arbitrators failed to answer the specific issues submitted to them and decided other matters instead, thereby exceeding their powers. Eneboes claim that this finding, which was a major ground for vacating the award, is erroneous. We disagree.

Ordinarily, judicial review of an arbitration award should be, and is, very narrowly limited. *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108 (2d Cir.1980); *L.R. Foy Const. Co. v. Spearfish Sch. Dist.*, 341 N.W.2d 383 (S.D.1983), Henderson, J., specially concurring. However, a court may vacate an arbitration award for the specified reasons found at SDCL 21–25A–24. One of these reasons occurs when the arbitrators have exceeded their powers. SDCL 21–25A–24(3). Other courts which have examined this issue have determined that the arbitrators' powers are derived from the arbitration agreement; therefore, the arbitration award must conform to, and comply with, the arbitration agreement. *Local 63, Textile Workers Union v. Cheney Brothers*, 141 Conn. 606, 109 A.2d 240 (1954); *cert. denied*, 348 U.S. 959, 75 S.Ct. 449, 99 L.Ed. 748 (1955); *Ramsey County v. AFSCME, Council 91, Local 8*, 309 N.W.2d 785 (Minn.1981); 6 C.J.S. Arbitration § 108 (1975).

In the present case, the parties agreed to submit four "issues subject to mediation-arbitration" to the arbitrators. Of these four issues, the first two are pertinent to this appeal. Issue number one stated: "Is the agreement entered into on March 28, 1974, one that now binds Everett and Evelyn Eneboe to sell the NW ¼ of 10–96–50 in Lincoln County to Paul and Glenadene Aamot?" Issue number two stated: "If not, what is a fair rental to be paid for use of land since March 28, 1974?" Despite this clear delineation of the issues by the parties, the arbitrators went beyond the questions presented. They did not decide whether the contract was binding, but rather, they tried to equitably divide the property between the parties, awarding 80 acres to each couple. Since such an equitable division was not within the scope of the agreed-upon issues for arbitration, the arbi-

trators exceeded their powers. The award simply did not conform to or comply with the arbitration agreement. The trial court's finding is, therefore, not clearly erroneous, SDCL 15-6-52(a), and the award was properly vacated.

With regard to the setting aside of the arbitration award, Eneboes also contend that the trial court erred when it 1) found that the parties were denied the right to be represented by counsel at the hearing, 2) found that Aamots did not waive their right to cross-examination at the hearing, 3) allowed testimony from arbitrators as to the thought processes behind their votes, and 4) found that the award was procured by undue means. We need not examine these other issues dealing with the arbitration award, however, since we concluded on the first issue that the trial court had sufficient statutory grounds to vacate the award.

The next set of issues raised by Eneboes deals with the portion of the decree ordering Eneboes to specifically perform the land sale contract. The trial court found that even though Evelyn Eneboe, as joint owner of the property, failed to sign the contract, she ratified it and should be estopped from denying that she is a party to the contract. This finding was based upon her acceptance of payments under the contract and her acknowledgment of the payments. Eneboes contend that this finding is in error for three reasons: 1) the documents signed by Evelyn are insufficient to meet the requirements of the statute of frauds; 2) the evidence is insufficient to show a ratification; and 3) equitable estoppel cannot be applied to these facts.

With regard to the statute of frauds argument, SDCL 53-8-2 states that an agreement for the sale of real property is not enforceable by action unless the agreement or some memorandum thereof is in writing and subscribed by the party to be charged. We have held that the writing referred to in SDCL 53-8-2 need not be entirely in one document; the writings may be disjointed memoranda or protracted correspondence, so long as the substance of a contract for the purchase of real property may be inferred from the writings. *Drake v. Sample*, 279 N.W.2d 685 (S.D.1979); *Townsend v. Kennedy*, 6 S.D. 47, 60 N.W. 164 (1894).

Here, although Evelyn never signed the original contract, she did sign subsequent writings which evidence the contract. In 1978, Evelyn, along with Everett Eneboe and the Aamots, signed an acknowledgment which stated: "Paul and Glenadene Aamot making a land payment of $6,200 on Jan. 5, 1978 for the N.W. ¼ of Sect. 10 of Pleasant twp. of Lincoln Co. of So.Dak. This will leave a balance of $63,600 left on the contract." Documents almost identical to this were also signed by Evelyn in 1979, 1980, and 1981. Along with these memoranda were checks drafted by the Aamots and made payable to "Mr. & Mrs. Everett Eneboe" or "Everett and Evelyn Eneboe." Since these memoranda state 1) the legal description of the property which is the subject of the contract, 2) the payments being made and the balance remaining, 3) the parties involved, and 4) that a contract exists, and since all were signed by Evelyn and the other parties, the writings meet the requirements of SDCL 53-8-2. The contract may easily be inferred from these writings. *Drake, supra.*

Not only do the memoranda meet the statute of frauds requirement, they are also a clear indication that Evelyn ratified the contract. Ratification is the confirmation or adoption of a previous act done either by the party himself or by another. *Schagun v. Scott Mfg. Co.*, 162 F. 209 (8th Cir.1908); *State Bank of Loretto v. Loose*, 198 Minn. 222, 269 N.W. 399 (1936); 75 C.J.S. Ratification (1952). *See also* SDCL 59-2-4; *Staab v. Skoglund*, 89 S.D. 470, 234 N.W.2d 45 (1975). Evelyn's acts of signing documents which acknowledged existence of the contract and receiving payments under the contract provided sufficient evidence for the trial court to find a ratification.

Because of our conclusions on the statute of frauds and ratification issues, we need not reach the estoppel question. We

do wish to note, however, that Eneboes' reliance upon *Stugelmayer v. Ulmer*, 260 N.W.2d 236 (S.D.1977), is misplaced. In *Stugelmayer*, we held that in an action for specific performance, a joint owner who did not join in any contract would not be forced to convey the property, even though she "acquiesced" in the transaction and did not object to the contract. *Stugelmayer* differs from the present case because the joint tenant in *Stugelmayer* never signed any documents relating to the transaction, as Evelyn did here; therefore, there was no question of the statute of frauds in that case, as there is in this case.

The decree of the trial court is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

As I perceive appellants' brief and oral argument before this Court, their principal advocacy is that the agreement between appellants and appellees was to accomplish a resolution of differences by the application of biblical—not legal—principles. According to appellants, a principal achievement between the parties was to be a reconciliation and this was to be far more important than a determination of legal rights. In effect, appellants advocate that the parties forsook their legal rights and prevailed upon the church to resolve their differences by biblical process rather than a legal process. I find no quarrel with the immortal words of Isaiah, "Come, let us reason together." Isaiah 1:18. For if this were done, the courts of law across this land would not be facing a crisis such as we see today. The resolve of all conflict should not be in courts of law and the Chief Justice of the United States Supreme Court, Warren Burger, has prevailed upon American citizens to find avenues of resolution other than litigation in courts.

Reconciliation of these parties was to be the first consideration through the process of mediation and a minister of the gospel was selected as the mediator. The minister saw his duty this way:

Well, we were meeting together as members of the church. The intention, as I heard them being stated by both, all four parties, was that they were in disagreement with each other and they were Christians. And because they were Christians and in disagreement, they wanted to resolve that disagreement in a way that was forgiving and that was loving. And they saw the church as being one vehicle through which that process could be worked. Apart from say more formal legal proceedings. So I, as a Pastor, then would be directed to help them in that process. And the panel itself then was also to be working with that guideline, to reason together as scripture directs. To understand each other. To forgive each other. And to reach some concensus of resolution, so that the past which was inflicting so much pain upon all members could be forgiven. And that's how I saw the purpose of the process.

The parties, however, by the same agreement subscribed that in the event that reconciliation and resolution were not achieved by the mediator, the parties would submit themselves to a board of arbitration. Once the parties agreed to arbitration, it would appear that the civil law attached to the arbitration panel. And within that arbitration panel, it was altogether possible that both good Christian ethics and sound equitable principles could simultaneously attend. In the law of equity, the conduct, acts, motives, and intentions of people are taken into consideration. So is it not, also, under God's law?

Having agreed to arbitration, the parties could not agree, as appellants' counsel would urge, that our system of justice and the jurisdiction of the courts be forsaken. The agreement between these parties called for a resolution of the issues by an arbitration panel in the event that mediation failed. Mediation did fail.

Appellants' counsel would have us construe the agreement of the parties to, in

effect, block appellees from a resolution of the differences of these parties in a court of law. If this agreement were so construed, and I do not believe that it can be under its terms, we would have before us the administration of justice being controlled by contract. "The administration of justice is not a subject to be controlled by contract, and the courts are agreed that agreements which have a tendency to obstruct, impede, or interfere with the administration of justice are contrary to public policy." 17 Am.Jur.2d *Contracts* § 193 (1964).

Furthermore, this state has enacted a statement of public policy in furtherance of the text of which I have addressed as follows:

Every provision in a contract restricting a party from enforcing his rights under it by usual legal proceedings in ordinary tribunals or limiting his time to do so, is void providing however, that agreements to submit controversies to arbitration, as authorized by the Uniform Arbitration Act, shall be considered valid and enforceable.

SDCL 53–9–6.

These litigants submitted this controversy to arbitration and were thus bound by the Uniform Arbitration Act enacted by this state. I am in accord with the majority opinion that the arbitration panel clearly exceeded its authority by deciding matters outside of the framework of the issues submitted to them in arbitration. Accordingly, I concur.